In re MARRIAGE OF Edward L. SEID-
ENFELD and Tobye K. Seidenfeld.

Upon the Petition of Edward L.
SEIDENFELD, Appellee,

and concerning Tobye K. SEIDENFELD,
Appellant.

No. 58794.

Supreme Court of Iowa.

May 19, 1976.

Donald A. Wine of Thoma, Schoenthal,
Davis, Hockenberg & Wine, Des Moines, for
appellant.

Joseph Z. Marks of Marks, Flagg, Hock-
ett & Marks, Des Moines, for appellee.

Heard by REYNOLDSON, Acting C. J.,
and MASON, RAWLINGS, REES and
HARRIS, JJ.

REYNOLDSON, Acting Chief Justice.

Respondent wife appeals from dissolution decree provisions relating to child custody, property settlement and alimony. We affirm the custody issue, modify the decree on the remaining issues, and remand.

Petitioner husband was born in 1937, respondent in 1939. Three children have been born to their October 19, 1958 marriage: Lisa Rae, born December 21, 1959; Michael Lee, born January 3, 1963; and David Aaron, born November 17, 1964.

Respondent's formal education terminated when she was married following her first year in college. Thereafter she was employed as a secretary for a few weeks. Several years later she worked for about a year as a coat-check person (intermittently and without pay) in Marty's Disco-Go-Go, assisting friends in starting a new business.

Petitioner graduated from an Iowa university in 1958. He owns 10 of 97 outstanding shares in Ted's Auto Parts, Inc. The remaining shares are owned by his parents and brother. Petitioner also owns a 50 percent interest in Central-Midwest Wreckers, Inc., but his stock certificate is presently held by his brother as security for an alleged indebtedness of $4500.

Petitioner is an officer in both corporations, drawing $12,000 salary from each in addition to fringe benefits.

The parties' home is valued by respondent at $45,000 to $50,000, with mortgage encumbrances of about $32,000. Other indebtedness totals approximately $14,000. They have lived beyond their means and have been deeply in debt for many years. While petitioner persuaded trial court this was respondent's fault, we do not perceive she was entirely to blame. For example, in 1973 petitioner took his family on a two-week vacation in Florida, where they stayed in a hotel in which each of their two rooms cost $160 per day.

At time of trial these parties had been married 16 years. Petitioner claims their difficulty commenced in the seventh or eighth year of marriage when respondent had an affair with another man she met at Marty's Disco-Go-Go.

In this dissolution trial court awarded respondent her personal effects, a 1974 Ford auto, and a lump sum property settlement of $6000 payable $500 per month. All other property, including the home and furnishings, was awarded to petitioner, who was granted custody of the three children. Trial court refused to award respondent alimony.

We treat these issues in the following divisions.

I. *Custody of children.*

Our de novo review of this issue is governed by those principles referred to in *In re Marriage of Winter*, 223 N.W.2d 165 (Iowa 1974); *In re Marriage of Novak*, 220 N.W.2d 592 (Iowa 1974); and *In re Marriage of Bowen*, 219 N.W.2d 683 (Iowa 1974).

Following separation of these parties in 1974 respondent remained in the home with the children. Michael, then age 11, soon left to join his father. Lisa and David remained with respondent until the dissolution decree was entered.

None of the children appears to have any remarkable emotional or physical problems.

Lisa's grades were beneath her capabilities after petitioner left the home. She was absent from school 16 times and tardy a number of times during the first semester of 1974. The record discloses Lisa's need for more strict supervision and a more structured environment.

Michael and respondent were unable to get along. He has made satisfactory progress with his schoolwork since he began living with his father early in the separation.

Testimony at trial throws little light on David's situation. He apparently has a strong identification with his brother.

Unfortunately, the children were not represented by counsel in this litigation. An independent investigator recommended custody arrangements following the expressed preferences of the children: Lisa and David with respondent and Michael with petition-

er. This opinion was based on little more than the children's desires and is clearly not the result of any in-depth study of the strengths and weaknesses of the parents. We believe in this instance the investigator's opinion is entitled to little weight.

Turning our attention to the parents, we are persuaded, on balance, the children's interests are best served by continuing their custody in the petitioner. While both parents love the children, the father appears best equipped to provide them with required discipline and structured environment.

Respondent's course of conduct indicates an immaturity and instability which might. adversely affect a household of impressionable adolescents. Over several years she developed a sleeping pill dependency which caused her to obtain prescriptions from several different doctors at the same time without their knowledge. Excessive use of the medication caused her to lose equilibrium and affected her speech. It became a serious problem. She testified she stopped taking the pills only shortly before trial.

Respondent's interest in other men subsequent to the earlier affair followed a pattern of immaturity and consumed time away from her children and home. Her spending habits—especially for clothing—were excessive and plainly compulsive.

Evidence concerning respondent's temper was strong. During one marital fight she broke petitioner's glasses. Another time she hit him over the head with a mirror. She cut up the seats on a business car she had been using when she was asked to return it to Ted's Auto Parts. While petitioner's conduct was not beyond reproach, it is apparent he has a more stable temperament than respondent.

Although fifteen-year-old Lisa's preference is entitled to weight, she also testified she gets along well with her father. She wants to stay in the neighborhood. David enjoys his brother Michael. We believe the children should live together with their father in the family home.

## II. *Property settlement and alimony award.*

■ As we have noted, trial court awarded petitioner the home, furnishings and all of his personal effects. He was ordered to pay all indebtedness. Respondent received a 1974 Ford auto of unknown value and $6000 payable in $500 monthly installments. We cannot agree with trial court these parties are insolvent, nor, in our judgment, is the above property distribution equitable.

Without considering the fault concept, we briefly relate some of the evidence in light of applicable criteria articulated in *Schantz v. Schantz* 163 N.W.2d 398, 405 (Iowa 1968) in determining property rights of these parties. *In re Marriage of Fisher*, 237 N.W.2d 452, 453 (Iowa 1976).

Petitioner retains his 10 percent interest in Ted's Auto Parts, Inc., which according to an exhibit introduced into evidence had a total net worth of $67,971.91.

Petitioner also retains his 50 percent interest in Central-Midwest Wreckers, Inc., which provides a telephone service to auto salvage dealers. In 1974 this service organization developed sales of $114,910.50 and a net profit of $2567.66 after paying petitioner and his brother each $12,000 in salary. Other fringe benefits included autos, home telephones and life insurance. Petitioner refused to place any value on his interest in Central-Midwest. Respondent values the business at four times earnings, or $100,000. The corporate financial statement lists its net worth as $14,553.82, allowing nothing for good will or increment of value as a going enterprise.

The record convinces us petitioner has a net worth well in excess of $50,000.

Respondent's parents gave the parties $2000 and a new car when they were married; petitioner's parents gave them $2000 to help buy a home.

Petitioner has a college education and considerable business experience. Respondent sacrificed a college education and job training to make a home and rear the children; she has no significant business experience or training.

Petitioner earned $24,000 in 1974, respondent earned nothing. His employment appears secure and his earnings should be at the same or a higher level. Given respondent's lack of training and experience, her earnings will be a fraction of petitioner's income. It is clear their former high standard of living was unjustified then and cannot be maintained now or in the future.

Consideration of all the significant *Schantz* factors demonstrates the imbalance between the parties' respective abilities to be self-supporting.

We agree with trial court that petitioner should be awarded the home, furnishings, and his personal property and effects, with the obligation to pay all indebtedness. We also agree respondent should not be required to pay child support and should have the visitation privileges specified by trial court.

We hold petitioner shall pay respondent the sum of $400 per month alimony for three years, commencing the first month following issuance of procedendo in this appeal. These payments should assist respondent in obtaining the further education or job training necessary to permit her to undertake a self-supporting career. These payments shall be a charge against petitioner's estate should he die before the end of the three-year period, and his obligation to pay alimony shall not terminate if she remarries.

We confirm trial court's decree in awarding respondent the 1974 Ford auto, but modify it by increasing the lump sum property settlement from $6000 to $17,000. Petitioner should not be required to pay all of this amount now, in view of his obligations to pay the indebtedness and totally support the children under trial court's decree. He shall pay $1000 now and the balance shall be paid in installments of $4000 each, without interest, on January 1, 1980, and on each succeeding January 1 until the full amount is paid. Property settlement payments already made by petitioner, if any, shall be credited against the $16,000 of deferred payments above provided for, and the annual installments reduced pro-rata.

III. *Attorney fees.*

■ Trial court's decree reserved jurisdiction to determine the issue of respondent's attorney fees. Respondent felt compelled to appeal at once to move this court for an order staying the custodial provisions. Although the motion was unsuccessful, the appeal deprived trial court of jurisdiction to award a sum for fees for legal services in district court. We may do this here, *In re Marriage of Moorhead*, 224 N.W.2d 242, 245 (Iowa 1974), as well as make an award to apply on attorney fees in this court.

■ A detailed statement of services rendered by respondent's counsel in district court totals 123.2 hours. Itemized services following appeal involved 83.2 hours. A cash-advanced statement totals $1371.60, but the bulk of this expense (including $1035.50 for transcript) consists of items reimbursable upon payment of court costs. The record reflects petitioner paid $505 toward respondent's attorney fees as this litigation progressed below.

Without attempting to fix the total value of the services of respondent's counsel, we hold petitioner shall pay within three months from the date this opinion is filed an additional $4000 to apply on respondent's district and supreme court attorney fees and on costs advanced. Petitioner shall pay all costs.

We affirm the provisions of trial court's decree relating to child custody and visitation rights. Property division is modified and alimony and attorney fees awarded as above set out. This case is remanded for entry of decree in accordance with this opinion.

AFFIRMED IN PART, MODIFIED IN PART, AND REMANDED WITH DIRECTIONS.