STATE of Iowa ex rel. Holly Marie PFIS-TER, a Minor, by Connie Marie Pfister, Mother and Next Friend, Petitioner–Appellee,

v.

Russell Duane LARSON, Respondent–Appellant.

No. 96–0564.

Court of Appeals of Iowa.

June 26, 1997.

Kevin E. Schoeberl of Story & Schoeberl Law Firm, Cresco, for appellant.

Thomas J. Miller, Attorney General, and Patricia A. McGiverin, Assistant Attorney General, for appellee.

Heard by HABHAB, C.J., and HUITINK and VOGEL, JJ.

VOGEL, Judge.

Russell Larson and Connie Marie Pfister are the parents of Holly Marie Pfister, born July 14, 1988. Russell was adjudicated to be Holly's father in 1990 and was ordered to pay $350 per month in child support. In April 1995, Russell, claiming a substantial change in circumstances, filed a second modification action, requesting a reduction in child support to $110.86.[1] Russell claims he is operating his farm at a net loss. He also claims that due to health reasons he is getting out of farming and his income will subsequently decrease as a result. Finally, Russell claims any child support obligation should be offset by the amount of dependent social security benefits which Holly receives. The district court denied the application and Russell appeals.

■ **Scope of review.** We review orders on applications to modify child support provisions de novo; nevertheless, the trial court has reasonable discretion in determining whether modification is warranted, and such discretion will not be disturbed on appeal unless there is failure to do equity. Iowa R.App. P. 4; *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983).

■ **Substantial change of circumstances.** What we must resolve in this case is whether there was a substantial change of circumstance in Russell's net farm income from the time the original support was set in 1990 to the time of trial which would justify a modification of child support. The burden is on Russell to prove such change warrants a modification in his child support obligations. *Ellis v. Ellis*, 262 N.W.2d 265, 266 (Iowa

1978). The general rule emerging from Iowa case law requires the party seeking modification to prove the following:

1) There must be a substantial and material change in the circumstances occurring after the entry of the Decree;

2) Not every change in circumstances is sufficient;

3) It must appear that continued enforcement of the original Decree would, as a result of changed conditions, result in positive wrong or injustice;

4) The change in circumstances must be permanent or continuous rather than temporary;

5) The change in financial conditions must be substantial; and

6) The change in circumstances must not have been within the contemplation of the trial court when the original Decree was entered.

See *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983); *Ellis*, 262 N.W.2d at 267. Further, Iowa Code section 598.21(8) (1995) provides that the "court may subsequently modify orders ... when there is a substantial change in circumstances" which includes considerations of each parent's earning capacity and other economic circumstances.

*I. Net income; income-producing assets.* At the time of trial, Russell was sixty-five years of age. He has farmed most of his life, owning a 318–acre farm. Russell receives annual CRP payments in the amount of $17,399, and rents out fifteen acres in pasture for an additional $1750 a year. Russell was soon eligible to receive social security benefits of $460 per month and Holly was eligible to receive dependent social security benefits in the amount of $230 per month until she reaches eighteen years of age.

Connie was thirty-five, unemployed since Holly's birth, and receiving $361 per month in public assistance for Holly. Connie has

---

1. In 1991, following a show-cause hearing, the district court found Russell in contempt for failure to make his child support payments. The court found Russell was not credible and was putting other obligations ahead of his child support payments. A second show-cause hearing was set in early 1992 when Russell unsuccessfully petitioned the court to reduce his child support obligation.

only minimal assets and lives at her parent's home with Holly.

The trial court found Russell's net worth to be $164,195. Russell listed on his financial affidavit his 318 acres of farm land (240 tillable acres) valued at $238,500. That would calculate to be under $750 per acre, which we recognize as low. There are two mortgages against the land, $22,000 in favor of FHA and $52,785 in favor of Homeland Bank. The net value of the land is then $163,715. In addition, Russell owns some livestock, which is fully encumbered, and farm machinery, unencumbered, valued at $20,500. Given the land and the machinery alone, Russell's net worth is $184,215.

■ While the child support guidelines are based on the parties' income, a trial court may in its discretion consider the parties' net worth as a permissible factor in setting or modifying child support. Such consideration is appropriate as the trial court can deviate from the child support guidelines as necessary to provide for the needs of the children and to do justice between the parties under the special circumstances of the case. *In re Marriage of Lalone*, 469 N.W.2d 695, 697 (Iowa 1991). This is of particular importance when one or both parents own substantial assets which could or should be income-producing. Imputing income from an income-producing asset is analogous to imputing income to an unemployed or under-employed person based on that person's earning capacity. *See In re Marriage of Flattery*, 537 N.W.2d 801, 803 (Iowa App.1995); *In re Marriage of Fogle*, 497 N.W.2d 487, 489 (Iowa App.1993). The trial court in this case looked at Russell's farm assets, together with other financial information and imputed to him a net monthly income of $1460.[2]

Even if, as Russell claims, his declining health impedes his ability to operate the farm himself, Russell has failed to show that his physical impairment deprives him of the financial resources to meet his legal child support obligation. Most of Russell's farmland (205 out of 240 tillable acres) is in the federal C.R.P. program, producing annual payments of $17,399. Additionally, Russell rents out fifteen acres of pasture. Even if Russell were totally incapable of working on the farm, we would, as the trial court did, impute income from such a substantial asset.

■ The trial court additionally considered Russell's actual adjusted gross income from his tax returns. His income had not varied substantially over the past six years, nor did his income substantially differ from the farm income in 1990 when the original support was set. In fact, Russell's gross farm income is actually larger than it was in 1989. The fluctuating nature of farm income does not justify an award of child support based on a sliding scale, according to each year's income. *See In re Marriage of Blume*, 473 N.W.2d 629, 632–33 (Iowa App. 1991). Net farm income can vary greatly from one year to the next. We therefore look, as did the trial court, to several years of financial records and tax returns to determine a fair assessment of net farm income. *See In re Marriage of Cossel*, 487 N.W.2d 679, 681 (Iowa App.1992). In Russell's case, there was not a significant variance in income to warrant a reduction in child support. The trial court also included Russell's social security retirement income in defining net income under our child support guidelines. *See In re Marriage of Lee*, 486 N.W.2d 302 (Iowa 1992). Russell has actually increased his income by the addition of his monthly social security check in the amount of $460.

■ The trial court has reasonable discretion in determining whether modification of child support is warranted and the court's findings will not be disturbed on appeal unless there is failure to do equity. *In re Marriage of Smith*, 501 N.W.2d 558 (Iowa App.1993). The trial court found Russell's farm operation and net farm income had not substantially changed since the initial support was set. We agree and affirm the trial court's finding of no substantial change of circumstances warranting a child support modification.

■ *II. Social security and child support payments.* Russell next contends any

---

**2.** The court imputed to Russell a net annual income of $12,000, after taxes, plus social security income of $460 per month, which translates to a net monthly income of $1460.

child support he owes should be offset against the social security benefit Holly receives. "As between the parties, the burden of seeking modification of a support order rightfully lies with the parent who seeks to offset a support obligation against social security benefits." *Newman v. Newman,* 451 N.W.2d 843, 845 (Iowa 1990). The trial court considered as income to Russell his social security income of $460 per month which was to begin March 1, 1996. Holly, as a dependent, was to receive $230 per month.

Russell cites the *Newman* case to advance his argument: "The rule in Iowa is that a child support award may be offset by social security benefits during the period in which the benefits are received." *Newman,* 451 N.W.2d at 844. The *Newman* case used the broad language of "social security benefits" while actually allowing an offset of the subcategory of social security *disability* benefits. No Iowa case has made the narrow distinction between social security *disability* and social security *retirement* benefits for the purpose of offsetting child support.

Russell is asking his child support to be offset by *retirement* benefits. First we must distinguish between social security retirement benefits and social security disability benefits. Disability payments are a *substitute* for income. *See Potts v. Potts,* 240 N.W.2d 680 (Iowa 1976). They may be and often times are unforeseeable at the time child support obligations are established. *Id.* The purpose of social security disability is to replace income lost because of the employee's disability; it is equitable then to treat dependency benefits as a substitute for child support. *Id.* at 681.

Conversely, social security benefits are a *supplement* to income. 42 U.S.C. § 301 (1994). Retirement age is not an unforeseeable fact. Unlike a disability, reaching retirement age to qualify for social security income does not automatically take away a person's ability to earn income. In this case, Russell retained his income-producing farm and now he has additional income in the form of retirement social security income.

Next, we turn to the issue of whether there should be a credit against the child support for the amount of dependent social security income Holly receives. We look to see how money paid by a source, other than the noncustodial parent, affects the child support obligation by examining Iowa Code section 598.22:

> Payments to persons other than the Clerk of the District Court and the collection service center do not satisfy the support obligations created by the orders or judgments, except ... for dependent benefits paid to the child support obligee as the result of *disability* benefits awarded to the child support obligor under the federal Social Security Act.

[redacted] *Id.* (Emphasis added.) A plain reading of this code section does not encompass social security *retirement* benefits. For Russell to argue it is the "intent and spirit" of section 598.22 to include retirement benefits is to read beyond the plain language of the statute. "What the legislature did not say may be as significant as what it said." *Patterson v. Iowa Bonus Bd.,* 246 Iowa 1087, 1104, 71 N.W.2d 1, 11 (1955). When a statute's terms are unambiguous and its meaning plain, there is no need to apply principles of statutory construction; the court need only look at the plain and rational meaning of the precise language. *State v. Caskey,* 539 N.W.2d 176, 177 (Iowa 1995) (citing *State v. Bond,* 493 N.W.2d 826, 828 (Iowa 1992) and *American Asbestos v. Eastern Iowa Community College,* 463 N.W.2d 56, 58 (Iowa 1990)). The rationale for only including disability payments in section 598.22 may be the fundamental difference between disability payments (as an income substitute) and retirement benefits (as an income supplement), as discussed above.

Some courts have allowed a credit based on the "earned" character of such federal benefits. These courts have reasoned that such credit is equitable as the benefits were earned during employment by the parent obligated to pay support. *See Lopez v. Lopez,* 125 Ariz. 309, 609 P.2d 579 (Ariz.Ct.App. 1980); *Horton v. Horton,* 219 Ga. 177, 132 S.E.2d 200 (1963); *Andler v. Andler,* 217 Kan. 538, 538 P.2d 649 (1975); *Cohen v. Murphy,* 368 Mass. 144, 330 N.E.2d 473 (1975); *Brewer v. Brewer,* 244 Neb. 731, 509 N.W.2d 10, 13 (1993) (citing *Cash v. Cash,*

234 Ark. 603, 353 S.W.2d 348 (1962)); *Mask v. Mask,* 95 N.M. 229, 620 P.2d 883 (1980); *Wilson v. Stenwall,* 868 P.2d 1317, 1318 (Okla.Ct.App.1992); *Children and Youth Serv. v. Chorgo,* 341 Pa.Super. 512, 491 A.2d 1374, 1377–78 (Pa.Super.Ct.1985). *See also In re Allsup,* 926 S.W.2d 323 (Tex.Ct.App. 1996); *In re Marriage of Saperstein,* 1997 WL 28547 (Wash.Ct.App.1997).

Other courts have refused to permit a retired noncustodial parent to receive credit against child support obligations for social security and V.A. benefits received by the children from that parent's account. *See, e.g., Stultz v. Stultz,* 659 N.E.2d 125, 128 (Ind.1995); *In re Marriage of Lang,* 668 N.E.2d 285 (Ind.Ct.App.1996); *In re Marriage of Haynes,* 343 N.W.2d 679 (Minn.App. 1984). The rationale for the refusal is the recognition that the children would be entitled to these benefits as a matter of law whether or not the parents were divorced. *See* 42 U.S.C. § 402(d)(1) (social security benefits).

Notwithstanding both lines of cases, our legislature has not included social security retirement benefits in section 598.22 and we decline to read beyond the clear language of the statute. *See Caskey,* 539 N.W.2d at 177.

Accordingly, we find the district court correctly denied Russell's request to offset the social security benefits received by Holly from his child support obligation.

**AFFIRMED.**