In re the **MARRIAGE OF Karen Kathleen BELL and Gary Donald Bell.**

Upon the Petition of

**Karen Kathleen Bell, Appellee,**

And Concerning

**Gary Donald Bell, Appellant.**
No. 96–2142.

Court of Appeals of Iowa.

Jan. 28, 1998.

Andrew P. Nelson of Meyer, Lorentzen & Nelson, Decorah, for appellant.

Marion L. Beatty of Miller, Pearson, Gloe, Burns, Beatty & Cowie, P.C., Decorah for appellee.

Heard by CADY, C.J., and SACKETT, and STREIT, JJ.

CADY, Chief Judge.

Gary Bell appeals from the economic provisions of the district court's dissolution decree. He claims the trial court erred in requiring him to pay alimony following his retirement and after the remarriage or cohabitation of his former wife, Karen. He also challenges the amount of alimony and the property distribution. We affirm as modified.

Gary and Karen Bell divorced after thirty-six years of marriage. At the time of dissolution Karen was fifty-five years old and Gary was fifty-six years of age.

Karen was employed in a variety of capacities during the marriage, including work as an LPN. She was also the primary caretaker of the parties' two children and she performed most of the household duties. Additionally, she assisted Gary with his business. She accompanied him on business trips, helped entertain business associates, and assisted in secretarial duties.

In 1995, Karen suffered a severe stroke. This has diminished her language, math, and communication skills. She also has limited use of her arms and suffers from angina, hypertension, diabetes, hypothyroidism, congestive heart failure, and asthma. Her health condition precludes her from future employment.

Gary was the primary source of income during the marriage. He worked in the egg processing business for most of his career. From 1990 to 1995, Gary earned between $64,145 and $84,754 per year. In 1996, his income exceeded $100,000. He changed employers shortly before trial. He currently earns a base salary of $60,000 per year. He can also earn bonuses based on the profitability of the company.

As a part of a severance agreement, Gary received payments in the amount of $46,859. He will owe taxes totaling approximately $18,000 from these payments.

The trial court awarded Karen a net property award of $103,040, including a lake home and a rental property. Gary received a net award of $135,484, including the parties' homestead. To equalize the distribution, the trial court awarded Karen a cash settlement of $15,000.

The district court ordered Gary to pay alimony in the amount of $1500 per month until either party dies. The decree further provided the alimony payment would be reduced by fifty percent in the event Karen remarries or cohabits with another person or when Gary begins to receive social security retirement benefits. In addition, Gary must provide health insurance for Karen which currently costs $293.40 per month. The alimony obligation was reduced by the actual cost of the insurance premium.

On appeal Gary claims the district court erred in requiring him to pay alimony beyond Karen's remarriage, cohabitation, or his retirement. He also asserts the trial court required him to pay excessive alimony and distributed the property inequitably.

### I. Standard of Review

We review this equitable matter de novo. Iowa R.App. P. 4. This requires us to examine the entire record and adjudicate anew

rights on the issues properly presented. *In re Marriage of Ruter,* 564 N.W.2d 849, 851 (Iowa App.1997). At the same time, we recognize the value in listening to and observing the parties and witnesses. Iowa R.App. P. 14(f)(7). Consequently, we give weight to the findings of the trial court, although they are not binding. *Id.*

## II. Alimony

■ Alimony is an allowance to the former spouse in lieu of a legal obligation to support that person. *See In re Marriage of Gonzalez,* 561 N.W.2d 94, 99 (Iowa App. 1997). When determining the appropriateness of alimony, we consider: (1) the earning capacity of each party; and (2) present standards of living and ability to pay balanced against the relative needs of the other. *In re Marriage of Kurtt,* 561 N.W.2d 385, 387 (Iowa App.1997); *In re Marriage of Miller,* 524 N.W.2d 442, 445 (Iowa App.1994).

■ Alimony is not an absolute right. Instead, an award depends upon the circumstances of each particular case. *Gonzalez,* 561 N.W.2d at 99. Many factors are considered in determining the appropriate amount of alimony to be awarded to a spouse. *In re Marriage of Siglin,* 555 N.W.2d 846, 850 (Iowa App.1996); Iowa Code § 598.21(3) (1995). Alimony may be used to remedy the inequities in a marriage and to compensate a spouse who leaves the marriage at a financial disadvantage. *In re Marriage of Geil,* 509 N.W.2d 738, 742 (Iowa 1993). Following a marriage of long duration, we have affirmed awards of both alimony and substantially equal property distribution, especially where the disparity in earning capacity has been great. *Gonzalez,* 561 N.W.2d at 99; *Geil,* 509 N.W.2d at 742. We also consider the division of property in determining alimony. *Siglin,* 555 N.W.2d at 850.

■ The general rule in Iowa is that while the subsequent remarriage of a spouse does not result in automatic termination of an alimony obligation, it shifts the burden to the recipient to show extraordinary circumstances exist which require the continuation of the alimony payments. *See In re Marriage of Shima,* 360 N.W.2d 827, 828 (Iowa 1985); *In re Marriage of Von Glan,* 525 N.W.2d 427, 429 (Iowa App.1994). The rationale behind this rule is it would be contrary to public policy to allow a party to receive support from both a prior and a current spouse. *In re Marriage of Cooper,* 451 N.W.2d 507, 509 (Iowa App.1989). Dissolution courts may, however, provide alimony is not modifiable, does not terminate on remarriage, or is payable in a lesser sum upon remarriage. *See In re Marriage of Phares,* 500 N.W.2d 76, 79 (Iowa App.1993); *In re Marriage of Aronow,* 480 N.W.2d 87, 89 (Iowa App.1991) (decree provided alimony would continue upon remarriage).

■ We have reviewed circumstances where our courts have permitted alimony to continue after remarriage of the recipient spouse. Whether continued alimony after remarriage is an appropriate term in an original decree for dissolution of marriage normally depends upon the purpose behind the award of alimony. Continued alimony after remarriage most often occurs with rehabilitative and reimbursement alimony.

■ Reimbursement alimony is predicated upon economic sacrifices made by one spouse that directly enhance the future earning capacity of the other spouse. In some instances, it would be unfair to terminate this type of award simply because the recipient spouse remarries. *See In re Marriage of Lalone,* 469 N.W.2d 695, 697 (Iowa 1991) (although reimbursement alimony did not apply in this case, the court recognized it is not subject to modification until full payment has been made except on recipient's death); *In re Marriage of Francis,* 442 N.W.2d 59, 64 (Iowa 1989) (reimbursement alimony not subject to modification or termination until full compensation except upon recipient's death).

■ Rehabilitative alimony serves to support an economically dependent spouse through a limited period of education and training. *In re Marriage of O'Rourke,* 547 N.W.2d 864, 866 (Iowa App.1996). The purpose behind this type of alimony also may justify continuing alimony beyond remarriage. *See In re Marriage of Seidenfeld,* 241 N.W.2d 881, 884 (Iowa 1976) (alimony payments to wife for the purpose of further education should continue even if wife remar-

ries); *In re Marriage of Boehlje,* 443 N.W.2d 81, 84 (Iowa App.1989) (alimony award containing education expenses ordered not to cease in the event of recipient spouse's remarriage); *In re Marriage of Orgren,* 375 N.W.2d 710, 712 (Iowa App.1985) (continuation of alimony especially appropriate where its purpose is rehabilitative).

 In addition to reimbursement and rehabilitative alimony, retirement benefits which function as a distribution of property but are classified as alimony may also continue upon the remarriage of the recipient. *See In re Marriage of Wilson,* 449 N.W.2d 890, 893 (Iowa App.1989) (retirement benefits distributed in the form of alimony do not terminate on remarriage of recipient). With the exception of reimbursement alimony, rehabilitative alimony, and in some instances retirement benefits distributed as alimony, there is no support for permanent alimony beyond remarriage absent proof of extraordinary circumstances arising from the remarriage. *See Cooper,* 451 N.W.2d at 509 (citing *Kantaris v. Kantaris,* 169 N.W.2d 824, 831 (Iowa 1969) (court rejected provision in decree mandating continued alimony beyond remarriage)); *Shima,* 360 N.W.2d at 829 (discussing the concept of extraordinary circumstances to justify continued alimony after remarriage).

 Gary maintains his alimony obligation should terminate upon Karen's remarriage or cohabitation, or upon his retirement and receipt of social security retirement benefits. We acknowledge special circumstances could arise in the future which would warrant permanent alimony after remarriage of the recipient spouse. In this case, however, we are unable to reasonably contemplate at this time that these circumstances would occur. The general rule that alimony should not continue after remarriage should therefore be followed in this case. *See Shima,* 360 N.W.2d at 828.

Accordingly, we modify the district court decree to remove the requirement that Gary pay alimony following remarriage or cohabitation with another person. If Karen remarries or cohabits with another person in a marriage equivalent relationship the alimony obligation shall terminate and the burden will shift to Karen in a modification proceeding to demonstrate extraordinary circumstances warranting continued alimony. *See id.;* 29 Am.Jur.2d *Evidence* § 161 (1994) (where information necessary to prove an issue is peculiarly or exclusively in the possession of one party, convenience and fairness may justify placing the burdens of pleading and proving those facts upon that party).

 Gary also objects to the continuation of his alimony obligation upon his retirement and receipt of social security benefits. In determining the necessity and length of alimony, we consider the earning capacity of each party, as well as the present living standards and ability to pay balanced against the relative needs of the other spouse. *See Kurtt,* 561 N.W.2d at 387. Gary currently has a good income and the ability to establish a retirement fund. Karen, conversely, is unable to work and will need Gary's continued support even after he retires. If his circumstances following retirement render him unable to continue support at that level, he may petition the court for a modification of the decree. *See In re Marriage of Hayne,* 334 N.W.2d 347, 353 (Iowa App.1983). We therefore agree with the district court that Karen's alimony should continue following Gary's retirement and receipt of social security benefits, but at a reduced amount of fifty-percent.

 Gary further contends his support obligation to provide medical insurance for Karen should terminate when she qualifies for social security and Medicare benefits. The decree states Gary must provide health insurance with coverage equivalent to that provided during the marriage. We agree that due to Karen's health condition she should continue to receive coverage equal to that provided in the marriage. We specifically modify the district court decree to provide that after Karen qualifies for Medicare, Gary shall provide supplement medical insurance so that Karen will maintain the same insurance benefits she received during the marriage.

 Gary next claims the amount of alimony was excessive and inequitable. Karen

qualifies for $395 in monthly social security disability benefits. She also has rental income of $300. Karen estimated her monthly expenses to be approximately $1320. Gary nets $3486.82 per month based on a $60,000 per year salary, without bonuses. He estimated his monthly expenses to be approximately $2625. The district court ordered him to pay alimony in the amount of $1500 per month.

■ There is a distinction between social security disability payments and social security retirement benefits. *See State ex rel Pfister v. Larson,* 569 N.W.2d 512, 516 (Iowa App.1997) (discussed in the context of child support). Disability payments are considered a substitute for income, while social security retirement benefits are a supplement to income. *Id.; Potts v. Potts,* 240 N.W.2d 680, 681 (Iowa 1976).

Because Karen's social security disability income is a substitute for income, her estimated monthly expenses of $1320 will be reduced by her disability income of $395. Her minimum monthly financial need will thus be $925. Although Karen has rental property income, we note the condition of the property will require repairs which will decrease her income from the property. Moreover, neither party will be able to live at the lifestyle they enjoyed while living together on Gary's income. Based on the long duration of the marriage, Karen's medical condition, Karen's needs, and Gary's ability to pay, we find $1100 to be a reasonable amount of alimony.

### III. Property Distribution

■ The partners to a marriage are entitled to a just and equitable share of property accumulated through their joint efforts. *See In re Marriage of Gonzalez,* 561 N.W.2d 94, 98 (Iowa App.1997); *see also In re Marriage of Russell,* 473 N.W.2d 244, 246 (Iowa App.1991). The Iowa courts do not require an equal division or a percentage division in determining a just and equitable share of property. *Gonzalez,* 561 N.W.2d at 98. Instead, each particular circumstance determines what is fair and equitable. *Id.* Further, the property distribution should be made pursuant to the criteria codified in Iowa Code section 598.21(1) (1995). *Id.*

■ Conduct of a spouse which results in loss or disposal of property otherwise subject to division at the time of divorce may be considered in making an equitable distribution of property. *See In re Marriage of Cerven,* 335 N.W.2d 143, 146 (Iowa 1983) (money transferred to son was a sham designed to shield husband from support obligations); *In re Marriage of Burgess,* 568 N.W.2d 827, 828 (Iowa App.1997) (waste of marital assets by spouse prior to dissolution of marriage can be considered in making property distribution); *In re Marriage of Williams,* 421 N.W.2d 160, 164–65 (Iowa App.1988) (husband's transfers of assets in violation of court order considered in making equitable distribution). Additionally, we recognize the dissipation or waste of marital assets by a spouse prior to dissolution may generally be considered in making a property distribution. *Burgess,* 568 N.W.2d at 828; *see* Lee R. Russ, Annotation, *Spouse's Dissipation of Marital Assets Prior to Divorce as Factor in Divorce Court's Determination of Property Division,* 41 A.L.R.4th 416 (1985).

■ Gary maintains the trial court did not arrive at an equitable distribution of property. Specifically, he claims the court erred in requiring him to pay Karen a cash settlement of $15,000. He asserts the $46,895 he received as part of a severance package did not include taxes due of approximately $18,758 and the taxes should be considered marital debt.

Gary received a net property settlement of $135,484. We recognize he will have to pay approximately $18,758 in taxes and assign that debt to him. This reduces his net property award to $116,726. After paying Karen the $15,000 cash settlement, his net award is reduced to $101,726. Karen received a net award of $103,040. With the $15,000 cash settlement, her award totals $118,040. The record indicates Gary spent significant portions of marital assets on gambling prior to the dissolution. For example, on one occasion he spent over $2000 at casinos. The night before trial he spent an additional $600 at a casino. We find the amounts of money Gary spent on gambling after the initiation of the dissolution proceedings to be wasteful of

marital assets and we consider this in our distribution. Consequently, we find the trial court's award resulted in an equitable distribution and decline to relieve Gary of the trial court's order to pay Karen $15,000. Further, any additional taxes owed by Gary from gambling winnings he failed to report will be assigned to him.

### IV. Attorney Fees

An award of appellate attorney fees is not a matter of right, but rests in our discretion. *Kurtt*, 561 N.W.2d at 389. In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal. *Id.*

Considering Karen's need and both parties' ability to pay, we find Gary should contribute $1000 for her appellate attorney fees.

### V. Conclusion

We modify the district court decree by eliminating the requirement for Gary to continue to pay alimony in the event of Karen's remarriage or cohabitation. Alimony shall terminate in the event Karen remarries or cohabitates with another person in a marriage equivalent relationship. Once Gary retires from his employment and receives social security benefits, his alimony obligation shall be reduced to fifty percent of the current amount. Once Karen becomes eligible for Medicare, Gary shall maintain supplemental medical insurance for the benefit of Karen so that she will maintain the same insurance benefits she received during the marriage. The decree is further modified to reduce the monthly alimony obligation to $1100. We decline to disturb the trial court's award of a $15,000 cash settlement to Karen, and otherwise affirm the district court. We award Karen $1000 in appellate attorney fees.

**AFFIRMED AS MODIFIED.**

STREIT, J., concurs.

SACKETT, J., concurs in part and dissents in part.

SACKETT, Judge (concurring in part; dissenting in part).

I would not remove the requirement that Gary continue to pay half of the ordered alimony on Karen's cohabitation or remarriage. This was a long-term marriage in which Karen assumed a lesser role for family support and a greater role for family care. Her disability precludes her from gainful employment. Her financial future should not be totally dependent on the ability of another man to support her.

I agree with the majority's decision affirming the district court's fifty percent reduction of alimony on Gary's retirement and receipt of social security retirement. I do not, however, adopt their reasoning that his ability to establish a retirement fund in the future is a factor to consider on the issue.

I would award no appellate attorney fees.

In all other respects, I concur with the majority.