# IN THE COURT OF APPEALS OF IOWA

No. 22-0550
Filed December 6, 2023

IN RE THE MARRIAGE OF LAURIE A. BITTNER
AND JOSEPH G. BITTNER

Upon the Petition of
LAURIE A. BITTNER, n/k/a LAURIE WAGNER REBER,
        Petitioner-Appellant,

And Concerning
JOSEPH G. BITTNER,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Margaret

Reyes, Judge.


        A former spouse appeals the district court's dissolution decree regarding

property disposition and spousal support. **AFFIRMED AS MODIFIED**.


        P. Shawn McCann of McGinn, Springer & Noethe, P.L.C., Council Bluffs,

for appellant.

        Stephen Babe of Cordell Law, LLP, Des Moines, for appellee.


        Considered by Tabor, P.J., Buller, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**BLANE, Senior Judge.**

Laurie Bittner (now Laurie Wagner Reber) appeals the dissolution decree that ended her marriage to Joseph Bittner (Joe).  Laurie argues that the trial court failed to include in the calculation of marital assets Joe's "cash bankroll" that she claims he kept in the house safe for gambling purposes.  She also contests the court's failure to find Joe dissipated assets after she filed the dissolution petition by his continued gambling as well as excessive spending as shown by his credit card use.  Finally, she contests the court's failure to award her transitional spousal support.  Upon our de novo review, we affirm the district court as to the "cash bankroll," dissipation of assets by excessive credit card spending, and denial of transitional spousal support, but we modify the decree as to the dissipation of assets by Joe's gambling.  We also deny Joe's request for appellate attorney fees.

## I.  Background facts and proceedings.

Laurie and Joe married on September 10, 2011, when Laurie was approximately forty-four years old and Joe was about thirty-one years old. The marriage was Laurie's second and Joe's third.  They each had children by their prior marriages, none being minors at the time of the dissolution trial.  Laurie is a high school graduate and works as a customer service supervisor earning $26.10 per hour or approximately $54,000 per year.  She has emphysema for which she uses an inhaler and some depression, but her health issues do not affect her work ability.  Joe has an eleventh-grade education and is a general manager for a trucking company with an annual salary of $72,800.  He also works as a freight broker for a logistics company where he makes about $400,000 a year.  His gross income in 2020 was $461,414.  He was earning $9300 a week in 2021 at the time

of trial. Joe suffers from anxiety and takes medication to control his high blood pressure but is otherwise active.

Starting around 2015, Joe began gambling. It was a social activity for both Joe and Laurie. Both would go to casinos. Joe would have relatively large gambling "swings" of $10,000 in wins and losses and was characterized as a "high roller." Laurie would gamble much smaller amounts or watch Joe playing.

The parties separated in July 2020. Laurie filed her petition for dissolution in August 2020. She alleged dissipation of marital assets and requested equitable distribution of marital assets and debts, spousal support, and an award of attorney fees. Joe filed his answer and countercomplaint, in which he admitted the breakdown of the marriage but denied the allegations regarding dissipation of marital assets and attorney fees. The answer did not respond to the spousal support request.

The dissolution trial was held on August 21, 2021. The trial court filed the dissolution decree in November. Pertinent here, the court determined Laurie's evidence did not establish Joe had a $25,000 "cash bankroll" in the safe at the house or that Joe dissipated assets, as his gambling and spending continued in the same manner as it had during the marriage. The court also denied the request for transitional spousal support. The court ordered Joe to pay Laurie an equalization payment of $92,684.07.

Laurie filed a motion to reconsider, enlarge, or amend. The motion re-asserted the claim of dissipation of marital assets by gambling and excessive spending, as well as challenging the court's failure to find the existence of the "cash

bankroll." It also asserted the court used an incorrect calculation for Joe's equalization payment to Laurie and failed to award spousal support. Joe resisted.

On February 25, 2022, the court filed its order on the motion. It modified the decree as to the excessive spending, finding Joe had spent $12,416.47 on his paramour, and that amount along with several other adjustments would be included in the equalization payment, which was increased to $155,327.51. The court denied the motion as to the dissipation of assets by gambling and excessive credit card purchases, the "cash bankroll," and the spousal support. Laurie appeals.

## II. Standard of review.

"Marriage dissolution proceedings are equitable proceedings." *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). "Thus, the standard of review is de novo." *Id.*; *accord* Iowa R. App. P. 6.907. "Although we give weight to the factual findings of the district court, we are not bound by them." *Mauer*, 874 N.W.2d at 106; *accord* Iowa R. App. P. 6.904(3)(g). "But we will disturb a district court determination only when there has been a failure to do equity." *Mauer*, 874 N.W.2d at 106.

## III. Discussion.[1]

Generally, marital property that exists at the time of the divorce other than gifts and inheritances to one spouse is divisible property. *In re Marriage of*

---

[1] We note initially that Joe argues in his appeal brief that Laurie's brief fails to set out preservation of error on the issues for review and for this reason we should find the issues have been waived. We elect to address the merits despite any shortcomings in the briefing. *See State v. Lange*, 831 N.W.2d 844, 847 (Iowa Ct. App. 2013).

*Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). The court must consider the factors set forth in Iowa Code section 598.21(5) (2020) when dividing the parties' assets and debts. Under our statutory distribution scheme, the first task in dividing property is to determine the property subject to division. The second task is to divide this property in an equitable manner according to the factors enumerated in section 598.21(5), as well as other relevant factors determined by the court in a particular case. *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005).

**A. "Cash bankroll"**

Laurie listed in her affidavit of financial status that Joe retained $25,000 cash at his home. At trial, she testified that during the marriage Joe kept between $20,000 and $30,000 cash in the home safe to have available when he went gambling. Laurie acknowledged that she had not been in the marital home for over a year, that the amount varied over time, and that she used the $25,000 figure as an average.

Another witness, Tiffany Baker, dated Joe from July 2020 to March 2021. During that time, she spent time with Joe and in his home. She testified Joe kept quite a lot of cash around the house, but not $25,000. She observed he kept cash in the safe. On one occasion, he had $25,000 in the safe, which was winnings from a night of gambling, but he then deposited it in the bank.

Joe testified at trial that he usually kept no more than $3000 to $4000 at home, that he usually deposited large sums of cash in the bank, and there was presently no cash in the home safe. He admitted that one time he did win $25,000 that he placed temporarily in the safe but then deposited that in the bank.

In its decree, the district court found

Laurie argues that Joseph regularly kept $25,000 in cash in a home safe to support his gambling. She requests the parties share the "bankroll" equally. Joseph denies this and states that while he might have maintained a few thousand dollars at home, any significant winnings would have deposited into the bank. The court finds that the evidence was insufficient to establish that the $25,000 bankroll exists.

Following Laurie's motion to reconsider, enlarge, or amend, the court further found

[A]t trial Joseph disputed that he maintained a $25,000 bankroll at the house and testified that he would have deposited such large gambling winnings into [a TS Bank account] in the fall of 2020. The court found Joseph's testimony credible and corroborated by the testimony of [Baker] who testified that Joseph told her at the time that he deposited the cash. In addition, [an exhibit] shows several deposits of approximately $20,000 between October 2020 and February 2021. . . . As set out in the Decree, the court finds that the evidence was insufficient to establish that Joseph maintained a $25,000 bankroll at home at the time of trial.

Accordingly, the court denied Laurie's motion to reconsider, enlarge, or amend. On appeal, Laurie modifies her argument and requests the court award her half of somewhere between the $3000 and $25,000.

"Although our review of the trial court's award is de novo, we accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity." *Schriner*, 695 N.W.2d at 495–96 (quoting *In re Marriage of Romanelli*, 570 N.W.2d 761, 763 (Iowa 1997)). Marital property typically is valued as of the date of the dissolution trial. *In re Marriage of Thatcher*, 864 N.W.2d 533, 545 (Iowa 2015) (citing *In re Marriage of Keener,* 728 N.W.2d 188, 193 (Iowa 2007) ("The assets should then be given their value as of the date of trial.")). In addition, cash is a liquid asset. *In re Marriage of McDermott*, 827 N.W.2d 671, 682–83 (Iowa 2013). As such, the exact amount held by the parties as of the date of the dissolution trial is subject to wide fluctuation and can

be difficult to determine. The general legal principle is that the "burden of proof in an action ordinarily rests with the party who is seeking recovery." *In re Marriage of Gust*, 858 N.W.2d 402, 418 (Iowa 2015).

The court found Joe's testimony that he did not keep that sum of cash in the home credible and found bank records corroborated his statements. We defer to those credibility findings and, on our review, we also find the evidence of the amount of cash being held by Joe in his home at the time of trial too speculative to include the suggested amount in the marital assets to be distributed.

**B. Dissipation of assets.**

**i. Gambling.**

Laurie contends that the district court failed to include in the marital assets an amount that Joe dissipated in his continued gambling between their separation and trial. Dissipation of assets is a proper consideration when dividing marital property. *In re Marriage of Olson,* 705 N.W.2d 312, 317 (Iowa 2005).

> In determining whether dissipation has occurred, courts must decide (1) whether the alleged purpose of the expenditure is supported by the evidence, and if so, (2) whether that purpose amounts to dissipation under the circumstances. The second issue requires the consideration of many factors, including (1) the proximity of the expenditure to the parties' separation, (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage, (3) whether the expenditure benefited the 'joint' marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and the amount of, the expenditure.

*In re Marriage of Fennelly*, 737 N.W.2d 97, 104–05 (Iowa 2007) (cleaned up for readability).

In the decree, the district court found Laurie's evidence showed that Joe's gambling expenses in 2018 and 2019 were consistent with those following

separation up to the time of trial. The court concluded that since Joe's gambling continued after the separation the same as before, this did not constitute dissipation of marital assets. In her motion to amend, Laurie was more specific and requested the court assign Joe $171,359.55 in gambling expenses. The court analyzed the evidence and stated: "When taken together with Joseph's monthly expenses the figures far exceed Joseph's gross earnings. Laurie's request for reconsideration of Joseph's dissipation of marital assets based on his gambling is denied."

We find the district court's analysis faulty in several regards. First, it does not appear the court applied the four-factors in *Fennelly.* Rather, the court appears to have applied only the second factor—whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage. Analyzing the four factors, first, Joe continued gambling significant amounts following the parties' separation until the dissolution trial. The purpose of gambling was purely entertainment and hardly a necessity. As to the second factor, we have already indicated Joe's gambling continued to much the same degree as before the separation. The third factor weighs significantly in favor of finding dissipation, as the expenditure did not benefit the 'joint' marital enterprise but was for the benefit of Joe to the exclusion of Laurie. The fourth factor—the need for, and the amount of, the expenditure—also weighs in favor of dissipation, as there was no need for the gambling, and while the amount may have seemed insignificant to Joe, it is not insignificant in the distribution of marital assets. Further, the critical question is "whether the payment of the obligation was a reasonable and expected aspect of the particular marriage." *In re Marriage of Burgess*, 568 N.W.2d 827,

829 (Iowa Ct. App. 1997). It was not. Our courts may also consider "'[w]hether the dissipating party intended to hide, deplete, or divert the marital asset.'" *Breckenfelder*, 737 N.W.2d 105 (citation omitted). Joe did not hide his gambling, but this does not offset the other factors. When all these factors are considered, we find that Joe's continued gambling of a significant sum constitutes dissipation of marital assets.

We find this conclusion is supported by two of our earlier cases. In *In re Marriage of Bell*, 576 N.W.2d 618, 624–25 (Iowa Ct. App. 1998), *abrogated on other grounds by In re Marriage of Wendell*, 581 N.W.2d 197 (Iowa Ct. App. 1998), our court held: "We find the amounts of money [husband] spent on gambling after the initiation of the dissolution proceedings to be wasteful of marital assets and we consider this in our distribution." We also found excessive gambling to be dissipation of assets in *In re Marriage of Martens*, No. 03-0549, 2004 WL 358889, at *3–4 (Iowa Ct. App. Feb. 27, 2004) ("We, like the district court, find that [wife's] testimony is more credible than [husband's] regarding the considerable assets expended by the couple on gambling. Although the record is clear that both parties gambled a great deal, it is also clear that [husband] dissipated much more of the parties' property than [wife] and did so in a secretive way.").

As with the cash bankroll, how much Joe dissipated by gambling is a difficult number to grasp. Laurie testified she personally reviewed various financial records produced by Joe through discovery and created Exhibit 45 which summarized that between their separation and the dissolution trial Joe had gambled at least

$171,359.95.[2] This amount is supported by documents from the various gambling venues and was not seriously challenged during cross-examination. We find this amount reasonably verified from those records. Laurie is entitled to one-half the amount dissipated by gambling, which is $85,679.77. This amount is to be added to the equalization payment Joe is to pay to Laurie.

### ii. Excessive credit-card spending on non-marital purposes.

Laurie further claims Joe dissipated an additional $186,138.21 by excessive credit card spending for non-marital purposes during the thirteen months between their separation and the dissolution trial. The evidence consists of Laurie's Exhibit 45, her calculations based upon analysis of financial records and her testimony. As we pointed out above, the burden is upon Laurie to prove the amount of dissipation. Here, as did the trial court, we find the evidence on credit card expenditures not as thorough or convincing as that supporting the gambling dissipation.

The district court in its ruling on the rule 1.904(2) motion held:

As set out above, the court finds that Laurie's evidence does not sufficiently support her allegations that Joseph dissipated an additional $186,138.21 on credit cards after payment of his taxes and monthly household expenses listed on his financial affidavit. Because Joseph is assessed all marital credit card debt, Laurie's request for reconsideration of dissipation of marital assets based upon Joseph's excess credit card spending is therefore denied.

On appeal, Laurie describes her evidence to support the credit card dissipation:

Regarding the excessive spending, Laurie explained Exhibit 45 with a spending number of $186,138.21 which was an analysis of Exhibit G where she went through each of Joseph's credit card accounts. Taking the beginning balance and the ending balance to calculate

---

[2] Laurie testified these amounts did not include amounts for gambling put on credit cards or cash.

what was paid on the cards. She calculated the extra credit card spending to be $186,138.21.

We find this conclusory analysis inadequate. It only gave Joe credit for credit card debt at the time of separation, payments on vehicle loans, and thirteen months of what she classified as "household bills." This does not include credit card expenditures that Joe would likely have made as regular living expenses. Joe did not account for where much of his significant income went during the separation until the dissolution trial, but it was not his burden to refute dissipation. We conclude Laurie's evidence was insufficient to prove dissipation in a specific amount of credit card purchases.[3]

### C. Spousal support.

Laurie appeals the district court denial of her request for an award of transitional spousal support of 20% of Joe's income. Our supreme court for the first time formally recognized transitional spousal support in *In re Marriage of Pazhoor*, 971 N.W.2d 530, 541 (Iowa 2022) *as amended* (Apr. 6, 2022), *reh'g denied* (Apr. 6, 2022). Both the decree and order on the motion to amend pre-dated *Pazhoor*, so the trial court did not have the benefit of that opinion, although some prior court of appeals cases had awarded what was called transitional alimony. In *Pazhoor*, the court stated several general concepts when considering spousal support:

> The question of whether to award alimony is a matter of discretion and not a matter of right. The decision to award alimony depends on the particular facts and circumstances of each case. The legislature has not authorized Iowa courts to employ any fixed

---

[3] Laurie does not appeal the dissipation claim regarding expenditures made by Joe on his paramour after separation. The district court in its rule 1.904(2) order found an additional $12,416.47 for "mistress gifts."

or mathematical formula in applying spousal support. Instead, courts are instructed to equitably award spousal support by considering the criteria listed in Iowa Code section 598.21A(1).

*Id.* at 537–38 (cleaned up for readability). Additionally, when addressing spousal support, we are mindful:

> Although our review is de novo, we allow the district court considerable latitude in awarding spousal support. Because the district court is in a better position to balance the parties' needs, we should intervene on appeal only when there is a failure to do equity. We accord the trial court considerable latitude in making the determination of spousal support and will disturb the ruling only when there has been a failure to do equity.

*In re Marriage of Stenzel*, 908 N.W.2d 524, 531 (Iowa Ct. App. 2018) (cleaned up for readability). We apply the criteria set out in Iowa Code section 598.21A in determining spousal support. *In re Marriage of Eastman*, No. 20-1677, 2021 WL 5106074, at *3 (Iowa Ct. App., Nov. 3, 2021).

More specifically, as to transitional spousal support, the supreme court informed:

> We conclude that formal recognition of transitional alimony will assist the bench and bar. There are inequities in dissolution beyond a spouse's economic sacrifices that directly enhanced the future earning capacity of the other, a spouse's need for education or retraining to become self-sufficient, or a spouse's responsibility to support the other so long as a dependent spouse is incapable of self-support. There may be a need for short-term support in some cases to help transition from married life to single life. Transitional alimony can ameliorate inequity unaddressed by the other recognized categories of support. Divorcing spouses must adjust to single life. If one is better equipped for that adjustment and the other will face hardship, then transitional alimony can be awarded to address that inequity and bridge the gap. We now formally recognize transitional alimony as another tool to do equity.

*Pazhoor*, 971 N.W.2d at 541–42 (cleaned up for readability).

We find that the factors here do not support an award of transitional alimony. This was a relatively short marriage, and the parties are relatively young, still working, and in reasonably good health. Their earning capacity is starkly different but, given the large property division, it is feasible for Laurie to maintain herself at a standard of living comparable to that she enjoyed during the marriage.

Most significantly, we find under the facts here that Iowa Code section 598.21A(1)(c) makes transitional spousal support unnecessary. That subsection requires us to consider "The distribution of property made pursuant to section 598.21." The district court rule 1.904(2) order required Joe to make an equalization payment to Laurie of $155,327.51. In this opinion, we have increased that amount by $85,679.77 due to gambling dissipation. This brings the equalization payment to $241,007.28, which supplants the need for transitional alimony.

### D. Appellate attorney fees.[4]

Joe requests an award of appellate attorney fees. His counsel submitted an attorney fee affidavit requesting $11,006.50.

Appellate attorney fees in a dissolution-of-marriage action are not awarded as a matter of right but rather rest in our discretion. Factors to consider in determining whether to award appellate attorney fees include "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *McDermott*, 827 N.W.2d at 687.

---

[4] The supreme court ordered the issue of appellate attorney fees be submitted for our consideration with the appeal.

Considering these factors, Joe is more capable of paying his attorney fees than Laurie, and both parties achieved some success in this appeal. For these reasons, we decline to award Joe appellate attorney fees.

**E. Conclusion.**

We affirm the district court decree as to the "cash bankroll," dissipation of assets by excessive credit card spending, and denial of transitional spousal support, but we modify the decree as to the dissipation of assets by Joe's gambling. We also deny Joe's request for appellate attorney fees.

**AFFIRMED AS MODIFIED**.