**In re the MARRIAGE OF Guy V. OLSON and Mary C. Olson.**

**Upon the Petition of Guy V. Olson, Appellant,**

**and**

**Concerning Mary C. Olson, Appellee.**

No. 04–0136.

Supreme Court of Iowa.

Sept. 30, 2005.

Rehearing Denied Nov. 8, 2005.

Barbara H. Liesveld of Thinnes & Liesveld, Cedar Rapids, for appellant.

Stephen B. Jackson and Stephen B. Jackson, Jr., Cedar Rapids, for appellee.

WIGGINS, Justice.

In this case, a spouse appealed a decree of dissolution. We transferred the case to our court of appeals. The court of appeals affirmed all but the alimony and insurance provisions of the decree. It reversed the district court award of traditional alimony and modified the decree to include rehabilitative alimony. Because we agree with the district court that traditional alimony is required in this case, we vacate the decision of the court of appeals and affirm the district court decree.

## I.  Scope of Review.

■ Because this is a dissolution case, the scope of review is de novo. *In re Marriage of Schriner,* 695 N.W.2d 493, 495–96 (Iowa 2005) (citations omitted); Iowa R.App. P. 6.4. Although weight is given to the fact findings of the district court, the reviewing court is not bound by them. Iowa R.App. P. 6.14(6)(*g* ).

## II.  Factual Findings and Proceedings.

We find the following facts upon our de novo review of the record granting due deference to the district court's credibility determinations. Guy and Mary Olson were married on June 7, 1980. Guy and Mary had five daughters. At the time of trial, Terin was twenty-two years old and engaged to be married. Kayce was twenty-one years old and attended college at the University of Northern Iowa. Ashley and Marni, twins, were eighteen years old and attended Benton Community High School. Ashley lived outside of the family home. Cami was sixteen years old and attended Benton Community High School.

Guy and Mary separated on March 5, 2002. On March 26, 2002, Guy filed a petition for dissolution of marriage. The case was tried in December 2003.

At the time of trial, Guy was forty-six years old. Guy completed high school and earned two associate degrees in instrumentation and electronics prior to his marriage to Mary. Cedar River Paper Company, now a part of Weyerhaeuser Company, employs Guy as a team member in the maintenance department. He earns $28.20 per hour as a salaried employee.

Over the last four years, Guy has worked between 500 and 1000 hours of overtime per year but has indicated he would like to decrease that amount. He has also received bonuses from his employer. While Guy's employer testified the bonus plans will change and it cannot guarantee overtime hours, the employer did not indicate that it would eliminate the availability of bonus plans or overtime hours in the future. Guy's earnings averaged around $88,500 per year for the five years preceding the trial. Overall, Guy is

in good health, although the overtime hours and stress surrounding the divorce may be negatively affecting his wellbeing.

At the time of trial, Mary was forty-eight years old. Mary completed high school and attended one year of college. Except for a very brief period, Mary's primary role during the marriage has been to stay at home and take care of the house and children.

In recent years, Mary has experienced significant health problems. In December 2002, Mary's physicians diagnosed her with grade three ductal adenocarcinoma. The final diagnosis revealed she had stage IIA breast cancer. Treatment for the cancer included a double mastectomy, chemotherapy, and breast reconstruction surgery. Mary's other health problems include diabetes with lethargy and peripheral neuropathy, fibromyalgia, and depression. Her past medical history reveals she has had abdominal surgery in connection with the delivery of the twins, has undergone carpal tunnel surgeries on both hands, and has had kidney stones. Additionally, Mary has had a severe reaction to a staph infection.

The district court continued the trial of this case on two occasions due to Mary's ongoing health problems. Mary takes numerous medications, including Prozac and Ritalin. Her medications cost her $250 per month. Guy's health insurance will not cover her after the dissolution. She can obtain COBRA coverage for three years at a cost of $200 per month.

The district court found Mary has the capability to be employed fulltime, earning approximately $8 per hour. At the time of trial, she remained unemployed.

Over the course of their marriage, Guy and Mary experienced financial difficulties. In June 2001, they discharged a large amount of credit card debt in bankruptcy

and reaffirmed the secured debt on their home. Guy claims Mary's gambling addiction caused the financial difficulties. We agree with Guy that Mary has a gambling problem but note Guy enjoys gambling as well, as evidenced by their trip to a casino after their bankruptcy hearing.

On December 18, 2003, the district court entered a decree dissolving Guy and Mary's marriage of twenty-three years. The district court divided Guy's defined benefit plan equally between the parties. It awarded the following property and debts with estimated values to Mary:

| | |
|---|---|
| Personal property | $ 2000 |
| 1996 Ford Windstar and loan | ($ 2000) |
| Share of Guy's 401(k) account | $26,000 |
| Other debts | ($ 8000) |
| Estimated Total | $18,000 |

The district court awarded Guy the following property and debts with estimated values:

| | |
|---|---|
| Family home and debt | ($29,000) |
| Personal property | $ 2000 |
| Share of Guy's 401(k) account | $16,000 |
| 1999 Saturn and loan | ($ 3000) |
| 1992 Ford truck and loan | $ 1000 |
| Other debts | ($ 1000) |
| Estimated Total | ($14,000) |

During the pendency of the action, Guy withdrew $6945 from his 401(k) account to purge himself of contempt. This early withdrawal caused Guy to pay a penalty and additional tax in 2002. Considering the penalty and additional tax, the withdrawal comes close to evening out the distribution made of Guy's 401(k) account between the parties. The withdrawal also increases Guy's property distribution by the amount of the withdrawal, penalty, and additional tax.

The district court ordered Guy to pay $1535 per month for three minor children, $1288 per month for two minor children, and $877 per month for one minor child. The district court based its award of child support on Guy continuing to work in his present job and working at least 300 to 400

hours of overtime per year. We agree with the district court that 300 to 400 hours of overtime is a realistic figure based upon Guy's health, work history, and the continued availability of overtime.

The district court also awarded Mary traditional alimony taking note of her status as a stay-at-home mom, her state of health, and her financial disadvantages. The court awarded Mary alimony of $1000 per month, to increase to $1750 per month after Guy's child support obligation ends, until she remarries, she dies, Guy dies, or he reaches age sixty-six, at which time all alimony obligations shall end. Additionally, the court ordered Guy to maintain $100,000 of life insurance with Mary as the named beneficiary as long as he is eligible to obtain term life insurance from his employer. Finally, the district court ordered Guy to pay $5000 towards Mary's attorney fees. Guy appealed.

Our court of appeals affirmed the district court decision concerning the property division, child support, and attorney fees. The court of appeals modified the district court decision by awarding Mary rehabilitative alimony of $1000 per month for four years. The modified award does not increase when Guy's child support obligation ends, and it terminates if Mary dies, remarries, or cohabitates with a male. Along with the modification of the alimony award, the court of appeals ordered Guy's obligation to maintain life insurance for Mary's benefit to end when the alimony obligation terminates.

Mary filed an application for further review, which we granted. In Mary's application for further review, she claims the court of appeals erred when it replaced the district court's award of traditional alimony with rehabilitative alimony. In Guy's resistance, he argues the facts supported the award of rehabilitative alimony by the court of appeals. Neither party argued about the property settlement, child support, or attorney fees in the application for further review or the resistance. Even though we have the discretion to review any issue raised on appeal regardless of whether such issue is expressly asserted in an application for further review, in this case we will let the court of appeals decision stand as to the property settlement, child support, and attorney fees. *See State v. Doggett,* 687 N.W.2d 97, 99 (Iowa 2004) (explaining that where a party seeks further review "we retain the discretion to consider all issues raised in the initial appeal"). In exercising our discretion, we will only review the alimony issue.

### III. Analysis.

■ When determining whether an award of alimony is appropriate under the facts of a particular case, we have stated:

> Alimony is a stipend to a spouse in lieu of the other spouse's legal obligation for support. Alimony is not an absolute right, and an award thereof depends upon the circumstances of a particular case. When making or denying an alimony award, the trial court considers the factors set forth in Iowa Code section 598.21(3). Although our review of the trial court's award is de novo, we accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity.

*In re Marriage of Spiegel,* 553 N.W.2d 309, 319 (Iowa 1996) (citations omitted).

Iowa Code section 598.21(3) (2003) describes the various factors the court considers in ordering support payments to a party in a dissolution case. The factors relevant to the instant case include: (1) the length of the marriage; (2) the age and physical and emotional health of the parties; (3) the distribution of property; (4) the educational level of each party at the

time of marriage and at the time the action is commenced; (5) the earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment; (6) the feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal; (7) the tax consequences to each party; and (8) other factors the court may determine to be relevant in an individual case. Iowa Code § 598.21(3)(*a*)-(*g*), (*j*).

■ The district court awarded Mary traditional alimony. Traditional alimony is "payable for life or so long as a spouse is incapable of self-support." *In re Marriage of Francis*, 442 N.W.2d 59, 64 (Iowa 1989). The court of appeals modified the alimony award by awarding Mary rehabilitative alimony stating that it would be "more equitable" to do so. Rehabilitative alimony is "a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting." *Id.* at 63–64 (citations omitted). We disagree with the court of appeals that the district court award of traditional alimony did not do equity between the parties.

Mary was forty-eight years old and had just completed her cancer treatments at the time the court dissolved her twenty-three-year marriage. She suffers from diabetes with lethargy and peripheral neuropathy. She also has fibromyalgia and depression. She is on medication for her health conditions. These conditions will cause her to incur substantial medical, insurance, and prescription costs.

Mary's educational background includes one year of college, but she has no significant work history. Based upon her health and her prior educational background, we agree with the district court that she would be able to earn approximately $8 per hour when she enters the job market. We also agree with the district court finding that she cannot be reeducated and retrained in a limited period to allow her to become self-supporting. The alimony awarded by the district court together with an $8 per hour earning capacity would just barely allow her to maintain a standard of living reasonably comparable to that enjoyed during the marriage.

Although Mary received significantly more in property distribution than Guy did, Guy received the residence. If Guy continues to make the payments on the residence, he should obtain substantial equity in the residence due to the mortgage payments and any appreciation of the residence. On the other hand, Mary will have to use the money she received in the property distribution to replace her deteriorating vehicle, pay off her credit card debts, and find a suitable place to live.

Finally, the federal and state governments will tax Mary's alimony, while Guy will receive a deduction on his tax returns for the alimony he pays. All these factors lead us to the conclusion the district court was correct when it awarded Mary traditional alimony.

■ Guy argues Mary's gambling should be considered among the "[o]ther factors the court may determine to be relevant in an individual case" in making an alimony award. Iowa Code § 598.21(3)(*j*). However, "the overriding legislative purpose of the dissolution act is

to remove fault-based standards for termination of marriages." *In re Marriage of Williams,* 199 N.W.2d 339, 344 (Iowa 1972). There we held:

> not only the "guilty party" concept must be eliminated but evidence of the conduct of the parties insofar as it tends to place fault for the marriage breakdown on either spouse must also be rejected as a factor *in awarding property settlement or an allowance of alimony or support money.*

*Id.* at 345 (emphasis added); *see also In re Marriage of Goodwin,* 606 N.W.2d 315, 324 (Iowa 2000) (rejecting the contention that domestic abuse should be considered under the catchall provision in property distribution "because it would introduce the concept of fault into a dissolution-of-marriage action"). In this case, Guy stated he desired a divorce from Mary only because he "could not continue to stand by while Mary ran up more bills and spent more money that [he and Mary] couldn't pay." This statement referred to Mary's gambling and credit card debts. Thus, the consideration of Mary's gambling problem under section 598.21(3)(*j* ) for the alimony award would be improper in view of the no-fault dissolution concept practiced in this state.

Another argument Guy makes for consideration of Mary's gambling problem is based on her dissipation of the marital assets during the marriage. We have recognized it is proper for the court to consider a person's dissipation of assets when it makes a property distribution. *See Goodwin,* 606 N.W.2d at 321 (observing that "a spouse's disposal of assets that would otherwise be subject to division in the dissolution may properly be considered in making an equitable distribution of the parties' property"). Our court of appeals has applied this proposition in the context of a party's gambling debts. *See In re Mar-*

*riage of Bell,* 576 N.W.2d 618, 624–25 (Iowa Ct.App.1998) (considering conduct of the husband in the property distribution based on the finding that "the amounts of money [the husband] spent on gambling after the initiation of the dissolution proceedings [was] wasteful of marital assets"), *abrogated on other grounds by In re Marriage of Wendell,* 581 N.W.2d 197, 200 (Iowa Ct.App.1998). The issue on appeal, however, does not concern the property settlement.

We have also recognized that the court can consider an intentional dissipation of assets to avoid future support payments when it makes an award of alimony. *See In re Marriage of Cerven,* 335 N.W.2d 143, 146 (Iowa 1983) (stating that "if the purpose of transferring one's assets prior to a dissolution of marriage is to protect oneself from future alimony payments, the court may look to the amount transferred in fixing alimony"). We are not, however, now confronted with such a situation. Moreover, we should not consider the constraints a payor spouse would like to place on the payee spouse when the payee spouse uses the support in a manner inconsistent with the wishes of the payor spouse. Nor should a court punish a person who is entitled to support because we disapprove of the way the person receiving the support spends the support.

Mary is entitled to support because of the factors set forth in Iowa Code section 598.21(3). Those factors indicate Mary is entitled to traditional alimony due to the minimal property distribution, her poor health, the length of the marriage, and the disparity in earning potential. If Mary spends her support on gambling, rather than on the necessities of life, she will have to live with the consequences of that decision, not Guy.

## IV. Disposition.

Therefore, we vacate the decision of the court of appeals and affirm the district court order requiring Guy to pay $1000 per month in traditional alimony for the benefit of Mary until such time as she remarries, she dies, Guy dies, or he reaches age sixty-six, at which time all alimony obligations shall end. When Guy's child support obligation ends, the alimony amount is to increase to $1750 per month. Additionally, Guy is ordered to maintain $100,000 of life insurance with Mary as the named beneficiary as long as he is eligible to obtain term life insurance from his employer. Neither party is awarded attorney fees on appeal.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT DECREE AFFIRMED.**

All justices concur except CARTER, J., who concurs specially.

CARTER, Justice (specially concurring).

In considering the totality of the evidence, I do not believe that the facts surrounding Mary's gambling habit provide a basis for altering the property settlement and alimony award made by the district court. I therefore concur in the result.

I do disagree with the court's emphatic and far-reaching assertion rejecting any consideration of a party's inappropriate conduct toward the other party in the marriage relationship as a factor to be considered in the division of property or the awarding of alimony. I am convinced that, for the reasons stated in the dissenting opinions in *In re Marriage of Williams,* 199 N.W.2d 339, 349–51 (Iowa 1972), there are many instances in which equity requires that fault in the sense of mistreatment of the other marriage partner be taken into consideration in determining those matters.