**IN THE COURT OF APPEALS OF IOWA**

No. 15-0784
Filed May 25, 2016

**SCOTT THOMAS WALKER,**
     Petitioner-Appellee,

**vs.**

**BRITTANI LEAH LUSK,**
     Respondent-Appellant.
_____

     Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt,

Judge.

     The mother appeals from the district court's custody and child support

order. **AFFIRMED AS MODIFIED; REMANDED FOR FURTHER**

**PROCEEDINGS.**

     Lynn C.H. Poschner of Borseth Law Office, Altoona, for appellant.

     Samantha J. Gronewald of Sullivan & Ward, P.C., West Des Moines, for

appellee.

     Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, Judge.**

Brittani Lusk appeals from the district court's order establishing custody, visitation, and child support for her minor child, A.W., born in 2011. Brittani maintains the child should have been placed in her physical care rather than the father, Scott Walker's. She also challenges the district court's calculation of her child support obligation and the award to Scott of $4000 for trial attorney fees. Both Brittani and Scott ask that we award them $6000 in appellate attorney fees.

**I. Background Facts and Proceedings**

Brittani and Scott met in 2009 and moved in together shortly after; the parties got engaged in late 2010, but they never married. A.W. was born in 2011. The parties resided with A.W. in Des Moines until Brittani ended the relationship in the summer of 2014; Brittani moved to Minnesota to live with her parents in July 2014.

As the district court found:

> After A.W.'s 2011 birth, both parents cared for A.W. and participated in all critical decision making concerning A.W. Brittany was primarily responsible for taking A.M. to, and retrieving A.W. from, daycare and medical appointments due to her work schedule and the fact that Scott drove a work truck that did [not] accommodate a car seat. Scott and his mother would assist with pick up and drop off as needed to accommodate Brittani's schedule. Scott's mother cared for A.W. an average of one or two times per week while the parents lived together and the court finds that she is physically capable of doing so.
> Scott was the primary cook and financial provider for the family. Brittani did the cleaning and laundry. When Scott was out of town overnight for business, Brittani was A.W.'s primary care provider. She would rely upon Scott's mother for additional help when needed. Scott and Brittani shared other duties regarding A.W.'s care.
> Brittany required time by herself before and after A.W. was born. Activities she participated in include going out with friends, riding and/or caring for her horse, attending horse

shows/informational meetings about horse shows, and playing volleyball in a weekly league. Scott was respectful of Brittani's need for time to herself. He cared for A.W. when Brittani engaged in these activities.

Both parents took an active role in caring for A.W.

Scott owns the home the parties lived in and that he continues to live in. He has remained with the same employer since 2010 and he is a valued member of the company; Scott's previous position at the company required some overnight travel, but a new position was created for him in August 2014 when Scott expressed that he would not be able to continue traveling for work while caring for A.W. Scott's salary is made up of $30,000 in base salary plus commissions. To determine his yearly income, the court averaged his annual salary from 2011–2014.

Brittani is not financially independent. She moved from the family home in Des Moines back to her parents' home in Minnesota. While living with her parents, Brittani does not pay for rent or food.[1] Brittani has had seven different jobs since 2009, and she was terminated from at least one of those positions. Brittani's current position pays her eighteen dollars per hour. She testified she is guaranteed a minimum of thirty hours per week and typically works between thirty-five and forty hours each week. On cross-examination, she admitted she is physically able to work forty hours per week and her employers "do whatever they can to accommodate [her] to make it closer to" forty hours. Her parents expressed that Brittani and A.W. could continue living with them for as long as

---

[1] Brittani testified that she was supposed to pay her parents $900 per month for rent, but they agreed she could pay her own legal fees in lieu of paying them rent.

they wish to do so. Additionally, Brittani's parents offered to pay tuition for A.W. to attend a pre-school near their home.

When Brittani left the family home, she moved to Minnesota without A.W. After she left, Brittani and Scott came to an agreement that they would take turns caring for A.W. in two-week periods until a more permanent solution was reached. On August 6, 2014, unbeknownst to Scott, Brittani and her mother drove to Des Moines and took A.W. from daycare. Per Scott and Brittani's agreement, A.W. was supposed to remain in Scott's care until August 16. Brittani absconded with A.W. back to Minnesota and then refused to respond to calls or messages from Scott for three days. At trial, Brittani testified that she regretted taking A.W. in that way and knew she should have made a different choice. She also testified that she intended to remain living in Minnesota whether or not A.W. was placed in her physical care.

On April 15, 2015, the district court filed its order placing A.W. in Scott's physical care. The court determined Brittani's child support obligation by averaging Scott's salary from the prior four years and by imputing income to Brittani as if she was working forty hours per work at her position. She was ordered to pay $471.69 per month. Additionally, Brittani was ordered to pay $4000 of Scott's attorney fees.

Brittani appeals.

## II. Standard of Review

We review custody decisions and child support obligations de novo. *In re Marriage of Olson,* 705 N.W.2d 312, 313 (Iowa 2005); *see also In re Marriage of Belger*, 654 N.W.2d 902, 904 (Iowa 2002). We give weight to the district court's

findings, especially regarding the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g). "Prior cases are of little precedential value, except to provide a framework for analysis, and we must ultimately tailor our decision to the unique facts and circumstances before us." *In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995).

### III. Discussion

#### A. Physical Care

The criteria governing custody decisions are the same whether the parents are dissolving their marriage or are unwed. *Lambert v. Everist,* 418 N.W.2d 40, 42 (Iowa 1988). The controlling consideration is the best interest of the children. Iowa R. App. P. 6.904(3)(o). As in this case, where neither party requests joint physical care, we use the factors enumerated in Iowa Code section 598.41(3) (2013) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), to determine which of the two parents is most likely to provide an environment that brings the children to health, both physically and mentally, and to social maturity. *See In re Marriage of Hansen*, 733 N.W.2d 683, 695–96 (Iowa 2007). Additionally, "the factors of continuity, stability, and approximation are entitled to considerable weight." *Id.* at 700. Not all factors are given equal consideration, and the weight of each factor depends on the specific facts and circumstances of each case. *In re Marriage of Williams*, 589 N.W .2d 759, 761 (Iowa Ct. App.1998). In making our determination, gender is irrelevant and neither parent has a "greater burden than the other in attempting to gain custody." *In re Marriage of Bowen*, 219 N.W.2d 683, 689 (Iowa 1974).

Brittani maintains A.W. should have been placed in her physical care because she has historically been the primary caregiver and A.W. thrived in her care. She asserts that our case law considering continuity, stability, and approximation requires us to modify the district court's placement of A.W. Additionally, she maintains the record establishes that she is the parent who is more likely to facilitate and support a relationship between A.W. and the other parent.

Both parents were involved in caring for A.W.; each spent time away from the home without A.W. and relied on the other parent to take on all of the responsibilities while they were away. Additionally, as an example, while Scott was rarely in charge of giving A.W. a bath, Brittani was rarely responsible for making the family's meals. Although Brittani maintains that she has been A.W.'s primary caregiver, the district court found—and the record supports—that the parents shared the responsibility of caring for A.W.

Placing A.W. in Scott's physical care provides her with more stability. Scott is financially independent and has maintained consistent employment. In his physical care, A.W. can remain in the only home she has ever known as well as continuing to attend the daycare and school that Scott and Brittani chose for her. Scott's mother lives on the same street and has helped with caring for A.W. one or two times a week since A.W.'s birth; in Scott's care, A.W. will continue to have regular contact with her. A.W. also has family that she loves and is bonded with in Minnesota, but historically she has seen them only once or twice a month. Brittani chose to relocate to Minnesota—approximately four hours from the family home—and she testified that she intended to remain there.

Brittani maintains she is the parent who is more likely to facilitate and support a relationship between A.W. and the other parent. We do not believe the record supports this assertion. Brittani's mother—who Brittani lives with and is financially dependent on—has not been supportive. We acknowledge that Brittani's mother testified she would support the relationship, but her actions indicate otherwise. The mother testified that she did not like Scott and that she stopped talking to Brittani when she first moved to Iowa to live with Scott. Throughout A.W.'s lifetime, the mother only came to Des Moines one time— when she and Brittani picked up A.W. from daycare and removed her from the state without Scott's knowledge. Brittani claims Scott's mother never liked her and will not encourage a relationship between A.W. and Brittani, but Scott's mother helped care for A.W. one or two times weekly throughout Scott and Brittani's relationship, and Brittani never objected to her involvement.

Both Scott and Brittani love A.W. and are capable of providing excellent care for her. However, the distance between the parties' residences make joint physical care unworkable, and neither party requested it. We agree with the district court that it is in A.W.'s best interests to be placed in Scott's physical care.

### B. Child Support

Brittani also appeals the child support award. She maintains the district court improperly imputed income to her, improperly averaged Scott's income, began the payment of child support prematurely, and improperly gave Scott the entire deduction for daycare expenses.

In applying the child support guidelines, the court must determine the parents' monthly income from the most reliable evidence presented. *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991). "Both parents have a legal obligation to support their children, not necessarily equally but in accordance with his or her ability to pay." *Moore v. Kriegel*, 551 N.W.2d 887, 889 (Iowa Ct. App. 1996). There is "a rebuttable presumption that the amount of child support which would result from the application of the guidelines prescribed by the supreme court is the correct amount of child support to be awarded." Iowa Ct. R. 9.4. However, the obligation "may be adjusted upward or downward . . . if the court finds such adjustment necessary to provide for the needs of the children or to do justice between the parties under the special circumstances of the case," *id.*, as long as the court makes "a written finding that the guidelines would be unjust or inappropriate" under specified criteria, *id.* r. 9.11. "When a parent voluntarily reduces his or her income or decides not to work, it may be appropriate for the court to consider earning capacity rather than actual earnings when applying the child support guidelines." *In re Marriage of Nelson*, 570 N.W.2d 103, 106 (Iowa 1997). In making this determination, "[w]e examine the employment history, present earnings, and reasons for failing to work a regular work week." *Id.*

The district court made these findings:

> Based on the documentary evidence presented at trial, Brittani currently earns $18.00 per hour with her current employer. She testified that she is guarantee 30 hours of work per week, she generally averages around 35 hours of work per week, and there is no reason she is not capable of working a 40 hour work week. On this basis Scott asks the court to impute an additional five hours of work and the earnings therefrom to Brittani per week. The court

finds that based upon Brittani's earning capacity and in order to provide adequately for A.W.'s needs, it is reasonable to set Brittani's gross annual income for purposes of calculating child support under the Guidelines at $37,440.

The court imputed income to Brittani without making a written finding that application of the guidelines would be unjust or inappropriate. *See* Iowa Ct. R. 9.11. We acknowledge the court stated it was imputing income "in order to provide adequately for A.W.'s needs," but the statement is not a substitute for the finding of substantial injustice or necessity.

On our de novo review, we determine the record does not support a finding that substantial injustice would result if the court used Brittani's actual hours worked, that adjustments are necessary to provide for the needs of A.W., or that Brittani is voluntarily underemployed without just cause. *See* Iowa Ct. R. 9.11(1), (2), (4). While Brittani is working less than a typical full-time schedule, she earns more at her present job than she has at any of her previous places of employment. The job position uses her education, and she testified that there is the possibility of promotion at the company. Additionally, there is no indication that A.W.'s care costs more than that of other children, as anticipated by the guidelines. Thus, there is no need to adjust Brittani's salary upward to determine her child support obligation.

We have considered Brittani's other claims of error regarding the child support obligation and we find no issues with the district court's decisions. We remand to the district court to recalculate Brittani's obligation based on the present financial circumstances of the parties and the child support guidelines. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 37 (Iowa 2015).

### C. Trial Attorney Fees

Brittani maintains the district court abused its discretion when it ordered her to pay $4000 of Scott's trial attorney fees. The court may award the prevailing party reasonable attorney fees. *See* Iowa Code § 600B.26.

Although Scott earns more money annually than Brittani, Brittani lives at her parents' home and does not pay rent or buy food. Additionally, Scott filed a writ of habeas corpus after Brittani absconded with A.W. Brittani maintains this should not be considered because the issue was resolved through mediation rather than litigation, but filing the writ and participating in mediation resulted in additional fees. We cannot say the district court abused its discretion in ordering Brittani to pay approximately one quarter of Scott's trial attorney fees.

### D. Appellate Attorney Fees

Both parties ask us to award them $6000 in appellate attorney fees. Appellate attorney fees are not a matter of right, but rather rest in the appellate court's discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). We consider the needs of the party seeking an award, the ability of the other party to pay, and the relative merits of the appeal. *Id.* In a custody proceeding between parents who have never married, the court may award the prevailing party reasonable attorney fees. Iowa Code § 600B.26. Taking into consideration these relevant factors, we decline to award either party appellate attorney fees.

## IV. Conclusion

It is in A.W.'s best interests to be placed in Scott's physical care, and the district court did not abuse its discretion by ordering Brittani to pay $4000 of Scott's trial attorney fees. We remand to the district court to recalculate Brittani's

child support obligation. We decline to award either party appellate attorney fees, and the costs of this appeal should be assessed equally to each party.

**AFFIRMED AS MODIFIED; REMANDED FOR FURTHER PROCEEDINGS.**

Danilson, C.J., concurs; Vogel, J., dissents in part.

**VOGEL, Judge.** (dissenting in part)

I agree with the majority physical care of the child should be placed with Scott and the trial court did not abuse its discretion in ordering Brittani to pay Scott's trial attorney fees. However, because I believe the court properly determined child support based on Brittani's testimony, I dissent in part.

Brittani testified she was guaranteed thirty hours per week, but she typically works "anywhere between thirty-five, and I get as close to forty as possible." She agreed there was no reason why she could not work forty hours a week. Brittani testified her employer does "whatever they can to accommodate me to make it closer to that forty" hours per week. It is thus consistent with the evidence for the district court to calculate Brittani's earnings at forty hours per week. *See In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991) ("The court must determine the parent's current monthly income from the most reliable evidence presented. This often requires the court to carefully consider all of the circumstances relating to the parent's income.").

There is, at most, a five-hour-per-week difference between the number of hours Brittani asserted she works and the number of hours the court used in it child support calculations. The court concluded utilizing forty hours per week was reasonable "in order to provide adequately for A.W.'s needs." *See* Iowa Ct. Rs. 9.4 (noting the child support amount "may be adjusted upward or downward, however, if the court finds such adjustment necessary to provide for the needs of the children"); 9.11(2) (stating the court can vary the amount of child support upon a written determination that the "[a]djustments are necessary to provide for the needs of the child(ren)"). With Brittani's own testimony that she is offered

and works as close to forty hours per week as possible, I would conclude the court properly applied the child support guidelines.

I differ from the majority on one further point regarding child support. I would modify the date that Brittani's child support obligation should commence. The parties' stipulated agreement as to physical care and child support was incorporated into the temporary order of August 22, 2014. Under that order, the parties alternated parenting time every two weeks, and Scott was ordered to pay Brittani $107.00 per month in child support. The final decree delayed any change in the physical care arrangement until August 1, 2015, ordering the parties to continue to alternate care every two weeks until then, but the court ordered Brittani's new child support obligation of $471.69 to begin on the first day of the month following the entry of the order, i.e., May 1, 2015. I would modify that provision of the district court's decision to make Brittani's child support obligation commence on August 1, 2015, the same day the new physical care arrangement begins. From May 1, 2015, until the end of July 2015, I would require the child support obligation ordered in the temporary order to remain in effect.

In all other issues, I concur with the court's opinion.