# IN THE COURT OF APPEALS OF IOWA

No. 19-0224
Filed February 19, 2020

IN RE THE MARRIAGE OF OSCAR FRANCISCO TORRES
AND MARIA VENTURA REYES-PINEDA

Upon the Petition of
OSCAR FRANCISCO TORRES,
        Petitioner-Appellee,

And Concerning
MARIA VENTURA REYES-PINEDA,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.


        A former wife challenges the district court's spousal-support analysis in the

decree dissolving her marriage.  **AFFIRMED AS MODIFIED.**


        Katherine S. Sargent, Des Moines, for appellant.

        Tammy Westhoff Gentry of Parrish Kruidenier Dunn Boles Gribble Gentry

Brown & Bergmann, L.L.P., Des Moines, for appellee.


        Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

Maria Reyes Pineda and Oscar Francisco Torres divorced after nineteen years of marriage. In the decree, the district court ordered Oscar to pay $959.51 per month in support for two children. The court also ordered Oscar to pay Maria one dollar per year in spousal support "to preserve [her] right to pursue a modification should circumstances change." On appeal, Maria challenges that place holder, contending the court should have awarded her traditional spousal support commencing when Oscar's child-support obligation ends. Because in the future Maria would be unable to show termination of child support qualified as a change in circumstances outside the contemplation of the court issuing the decree, we find it equitable to modify the decree now to order spousal support.

## I. Facts and Prior Proceedings

Oscar and Maria married in August 1999 and divorced in December 2018. They had three children together. The two younger children, twins, were born in 2003. At the time of the divorce trial, they were sophomores in high school and lived with Maria.[1]

Neither Oscar nor Maria continued their education after graduating from high school in El Salvador. They both spoke primarily Spanish and had minimal English language skills. Oscar was forty years old at the time of the trial. He worked as a production supervisor at Pine Ridge Farms, a pork supplier and processor, earning an annual income of $54,762. Maria was forty-nine years old. She worked full time at Cintas, which supplies uniforms and other workplace

---

[1] The parties' eighteen-year-old daughter also lived in the family home with Maria.

products, earning thirteen dollars per hour. The court found her annual income to be $27,040. She was out of the work force for one year after the twins were born, and again in 2013 to provide care for a family member. Both parties enjoy good health, though Maria has been taking medication for depression and anxiety for about fourteen years.

After pretrial stipulations on custody arrangements, the district court decided three issues: the amount of child support, the propriety of spousal support, and attorney fees.[2] The decree set Oscar's child support obligation at $959.51 per month for two children and $662.15 per month for one child (though the support for the twins was likely to terminate at the same time when they graduated from high school in May 2021).[3]

To gauge whether Maria was entitled to spousal support, and if so, how much, the district court started with "the budgets supplied by the parties in their respective affidavits of financial status." The court found Oscar's monthly expenses (excluding child support) were $2394, while Maria's monthly expenses were $3910. On the other side of the ledger, (taking into account the award of child support) the court found Oscar's net monthly income would be $2364, while Maria's net monthly income would be $2591.

After setting out those figures, the district court recognized Maria's "considerable shortfall in terms of meeting her monthly expenses" (to the tune of $1319). But still the court concluded Oscar was "not in a position to contribute

---

[2] The parties agreed Maria would continue to live in the marital home with the children. That house had a mortgage balance of $118,000 and no equity. The decree directed Maria to apply to refinance the home in her name.
[3] The court did not order a postsecondary-education subsidy.

further in the form of spousal support." Thus, the court declined to award alimony though the length of the marriage and Maria's "obstacles in becoming self-sufficient" would suggest the appropriateness of traditional spousal support. Instead, the court awarded one dollar per year to ensure that Maria could "pursue a modification should circumstances change."

Spousal support is the sole issue on appeal.

## II.     Scope and Standard of Review

The district court considers a divorce case in equity, so we review its ruling de novo. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We will disturb a spousal support determination only when the court fails to do equity between the parties. *Id.*

## III.     Analysis

No divorcing party can claim an absolute right to spousal support. *In re Marriage of Fleener,* 247 N.W.2d 219, 220 (Iowa 1976). The propriety of such a stipend depends on the circumstances of each case. *Id.* Iowa courts consider a host of statutory factors in deciding whether to grant spousal support. *See* Iowa Code § 598.21A(1) (2018). Particularly relevant to our decision here is the parties' nearly twenty-year marriage, as well as their ages and earning capacities. These parties teeter on the "durational threshold" where traditional alimony merits serious consideration.[4] *See In re Marriage of Gust*, 858 N.W.2d 402, 410–11 (Iowa 2015). And the district court appreciated Maria's "obstacles" in becoming self-supporting.

---

[4] Traditional alimony is owed for the life span of the receiving spouse or so long as that spouse is incapable of self-support. *In re Marriage of Olson,* 705 N.W.2d 312, 316 (Iowa 2005).

But the court faced the stark reality that Oscar could not afford to pay any amount over and above his child-support obligation. *See id.* at 412 ("Where a spouse does not have the ability to pay traditional spousal support, however, none will be awarded.").

That reality is not lost on Maria. She does not dispute the court's finding that Oscar cannot afford to pay spousal support on top of his child support obligation. So she asks for traditional spousal support of $600 per month to start in June 2021—after the twins graduate from high school. To justify that award, she underscores the length of the marriage, and the fact that Oscar is nine years younger and earns about twice as much annually. She contends that amount of spousal support is necessary to meet her expenses and build more equity for her retirement.

In response, Oscar does not contradict Maria's case for alimony. Rather he argues it would be "best advanced" during a modification proceeding when the court is in a better position to assess their relative incomes and expenses.

Indeed, to protect Maria's future interests in spousal support, the district court awarded her the symbolic amount of one dollar per year, anticipating she could seek modification "should circumstances change." *See In re Marriage of Wessels*, 542 N.W.2d 486, 489 (Iowa 1995) ("It was important that the initial decree awarded some alimony because where no alimony is initially awarded the decree cannot be modified to allow any."). But, as Maria points out, the court's dollar award would allow for modification only if she could later identify a substantial change in circumstances not within the knowledge or contemplation of the court when it entered the decree. *See In re Marriage of Sisson*, 843 N.W.2d 866, 871

(Iowa 2014).  Undeniably, the district court knew the twins would graduate from high school and reach the age of majority in May 2021.  *See Mears v. Mears*, 213 N.W.2d 511, 516 (1973) (declining to modify when prior court "took into consideration that the boys would grow older").  Given that knowledge, the termination of Oscar's $959 per month child support obligation in 2021 would not qualify as a substantial change outside the contemplation of the court issuing the decree.

We find it inequitable to ask Maria to wait, file a petition to modify based on the termination of child support, and then face a probable denial because the court contemplated this exact circumstance in the decree.  It is unlikely Maria's financial situation will take a dramatic upturn before the summer of 2021.  As things stand, both Oscar and the district court essentially acknowledge Maria is a candidate for traditional spousal support.  Under these circumstances, it is a better use of judicial resources, and more respectful of the parties' means, to order spousal support as part of this original proceeding.  If a substantial change in circumstances does occur, whereby Maria becomes self-supporting or Oscar experiences an unforeseen financial hardship, then Oscar can seek modification.

As Maria notes, it is not unusual in our case law for the decree to order an increase in spousal support once a child support burden lessens.  *See, e.g.*, *Gust*, 858 N.W.2d at 404 (affirming award of spousal support which increases from $1400 to $2000 per month upon termination of child support); *Olson*, 705 N.W.2d at 315  (ordering alimony to increase from $1000 to $1750 per month after child support obligation ended); *Locke v. Locke*, 263 N.W.2d 694, 695 (Iowa 1978) (increasing alimony from $200 to $300 per month after child support terminated).

Following this line of authority, we conclude Oscar's spousal support should increase from one dollar per year to $500 per month in traditional spousal support starting when his child support obligation ends. These spousal support payments shall terminate upon Maria's remarriage; upon the death of either party; or when Maria begins to receive social security retirement benefits. We find a monthly stipend of $500 is appropriate given the parties' net incomes, their education background and future earning capacities, and the difference of nine years before Oscar reaches retirement age. Oscar discourages setting a specific amount of spousal support in this proceeding in favor of a "wait-and-see" approach to consider the financial situations of each party at that time. As we have indicated, that would be an appropriate time for a modification petition. Costs are assessed equally between the parties.

**AFFIRMED AS MODIFIED.**