# IN THE COURT OF APPEALS OF IOWA

No. 19-1925
Filed January 21, 2021

IN RE THE MARRIAGE OF MUN NAM KOAK
AND NYEDOW KOAK

Upon the Petition of
MUN NAM KOAK,
  Petitioner-Appellant,

And Concerning
NYEDOW KOAK,
  Respondent-Appellee.
_____

  Appeal from the Iowa District Court for Polk County, Joseph Seidlin, Judge.


  Mun Koak appeals the physical care and spousal support provisions of the decree dissolving his marriage. **AFFIRMED.**



  David A. Morse of Law Offices of David A. Morse, Des Moines, for appellant.

  Nyedow Koak, Des Moines, self-represented appellee.



  Considered by Doyle, P.J., and Mullins and Greer, JJ.

**MULLINS, Judge.**

Mun Koak appeals the physical care and spousal support provisions of the decree dissolving his marriage to Nyedow Koak. He argues the district court erred in failing to order joint physical care of the parties' children and in ordering him to pay spousal support.

**I.     Background Facts and Proceedings**

Mun and Nyedow Koak both grew up in South Sudan and have become United States citizens. Mun came to the United States in 1995. Since that time, he has earned undergraduate and master's degrees. Mun met Nyedow when he returned to Africa in 2002. The couple became engaged and Mun began the process to bring Nyedow to the United States. The couple had a child before Nyedow was able to enter the country. She was able to move to Iowa in 2006 and the parties were married the same year. The couple had two more children in Iowa. Mun also has children from prior relationships. The parties established separate residences in 2017 and shared care of the children. A temporary order was entered in September 2018, establishing a parenting-time schedule and temporary child support.

The dissolution was tried to the bench in September 2019. The decree followed in October. The district court granted the parties joint legal custody but awarded physical care of the children to Nyedow. It also awarded spousal support to Nyedow in the amount of $300 per month. Mun appeals.

## II.    Standard of Review

Our review is de novo.  *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007).  "We give weight to the findings of the district court, especially to the extent credibility determinations are involved.  *Id.*

## III.    Discussion

### A.    Physical Care

Mun argues the district court erred in awarding physical care of the parties' three children to Nyedow.  He contends the district court failed to consider the educational needs of the children and the existing care schedule the parties had after the temporary order was entered.

Our primary consideration is the best interests of the children.  *Id.* at 695. "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity."  *Id.*  We consider statutory and common law factors when making physical care determinations.  *Id.* at 696 (indicating the statutory factors listed for custody determinations in Iowa Code section 598.41(3) (2018) are applicable to physical care determinations); *see In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974) (including a nonexhaustive list of factors for courts to consider in making custody determinations).

The district court noted that "Mun portray[ed] Nyedow as being lazy and virtually helpless."  He testified Nyedow had an extremely limited grasp of the English language, could not communicate with the children, and had inadequate education to help the children with homework.  Nyedow did not reciprocate the criticism, and told the court Mun was a good provider for the family but rarely cared

for the children. Nyedow and other witnesses testified she has communication skills in English, and is an attentive parent. The district court found Mun's testimony was not credible, stating: "Mun's willingness to lie so boldly regarding Nyedow's and the children's ability to function in the community give the court pause in considering the credibility of his testimony overall, and also whether someone willing to go to such lengths to get what he wants is able to effectively co-parent."

The district court made the following findings regarding child custody.

The facts set forth above do not provide clear and convincing evidence that joint legal custody is not in the best interests of these children. Each parent is a suitable custodian for the children; the psychological and emotional needs and development of the children would suffer if there was a lack of active contact with and attention from both parents; and both parents have actively cared for the children before and since the separation. . . .

. . . .

Although both parties are capable of good communication between them, Mun has chosen not to do so. He refuses to communicate with Nyedow, has kept important information about [the parties' oldest child] from Nyedow, and has disparaged Nyedow on social media. The court has little confidence that Mun will willingly keep Nyedow appraised of important information concerning the children and their activities going forward. Nyedow has at least made efforts to communicate with Mun over the course of their separation.

The weight of the credible evidence supports Nyedow's claim that she has been the more active parent in caring for the children on a daily basis both prior to and after the parties' separation. The court will aim to put in place a schedule that best approximates the roles that these parents have had in the children's lives. The court will provide that Nyedow has primary physical care of the children, with Mun having liberal, frequent parenting time. This arrangement will provide the children with the continuity and stability of care that they need now and into the future.

Our review of the record reveals that Nyedow has been the parent to consistently provide care for the children due to Mun's work schedule and community engagements. She is willing and able to communicate with Mun about

the children and their needs. Mun's history of shaming Nyedow on social media does not demonstrate a willingness to co-parent the parties' children. On our de novo review, we agree with the district court that it is in the best interest of the children to grant physical care to Nyedow and "liberal, frequent parenting time" to Mun.

B.     Spousal Support

Awards of spousal support are reviewed de novo, but "we accord the trial court considerable latitude." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2006) (quoting *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005)). "We will disturb the trial court's order 'only when there has been a failure to do equity.'" *Id.* (quoting *Olson*, 705 N.W.2d at 315). Iowa Code section 598.21A(1) lists the criteria courts must consider when determining spousal support. Spousal support awards are at the discretion of the court, which examines the factors and complete record in each case on a case-by-case basis. *Id.* at 408.

The district court ordered that child and spousal support be paid by Mun to Nyedow. The child support award is not a part of this appeal. The court made the following findings regarding spousal support.

> This is neither a short-term nor long-term marriage. Nyedow has many years left to fully participate in gainful employment, and the court received no evidence that she is not in good health. Neither party is receiving a substantial property award. Nyedow has no formal education, and her language skills are limited, whereas Mun has obtained a Master's level education, and is fluent in English. Nyedow's earnings and earning capacity, alone, do not allow her to be self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage. The parties relied primarily on Mun's income during the marriage. Nyedow will primarily be responsible for the care of the children in her home, while receiving child support from Mun. While Mun has only a limited ability to pay alimony currently, he has the capacity to earn, and has earned in the

past, much more than he is earning at this time. Nyedow's earning capacity does not appear to be much, if any, higher that what she is currently earning.

Based on all of the above factors, the court concludes that Nyedow [is] entitled to an award of spousal support in the amount of $300.00 per month for a period of ten years, or until Nyedow's remarriage or either party's death.

Mun argues the district court failed to consider child support payments he makes for his child from a prior relationship when determining the spousal support award in this case. Our review of the record shows that Mun testified that he made these child support payments but did not testify to the amount or frequency of payments. Mun's paystubs show withholdings from his biweekly paycheck of $33.23 for child support in 2017, but the amount decreased to $27.69 in October 2017 and remained at that rate in 2018. Neither Mun's financial affidavit nor the child support guidelines worksheets submitted to the court for this dissolution referenced any obligation for spousal or child support for other children. Furthermore, at the time of trial in 2019, Mun was working solely for one employer and the one paystub entered into the record showed no child support wage withholding.

Our de novo review of the record shows that at the time of trial no child support payments to children from prior relationships were being made. Accordingly, we find no reason to disturb the trial court's findings or calculation of spousal support.

## IV. Conclusion

On our de novo review of the record, we find the district court did not err in awarding physical care of the parties' children to Nyedow. Finding no evidence to

support Mun's claim the court failed to consider pre-existing child support payments, we do not disturb the district court's spousal support award.

**AFFIRMED.**