**IN THE COURT OF APPEALS OF IOWA**

No. 24-0560
Filed February 5, 2025

IN RE THE MARRIAGE OF CELINA I. JOHNSON
AND COREY A. JOHNSON

Upon the Petition of
CELINA I. JOHNSON,
        Petitioner-Appellee,

And Concerning
COREY A. JOHNSON,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Monona County, Zachary Hindman,

Judge.

        Corey Johnson appeals the physical care, child support, and spousal

support provisions of the district court's decree dissolving his marriage.

**AFFIRMED.**

        T. Cody Farrens of Tigges, Bottaro & Lessmann, LLP, Sioux City, for

appellant.

        Celina I. Johnson, Onawa, self-represented appellee.

        Considered by Greer, P.J., and Ahlers and Badding, JJ.

**AHLERS, Judge.**

Corey and Celina Johnson married in 2004 and have four minor children. During the marriage, Corey worked full-time, including significant amounts of overtime, and the couple agreed that Celina would stay home to care for the children and homeschool them until they reached eighth grade. At the time of the parties' dissolution-of-marriage trial in 2023, the three oldest children were enrolled in public school and the youngest continued to be homeschooled. The district court granted the parties joint legal custody of the children, granted Celina physical care, ordered Corey to pay child support in the amount of $2225.36 per month,[1] and ordered Corey to pay spousal support in the amount of $1000 per month until May of 2030, and then $500 per month until May of 2035.

Corey appeals. He challenges the grant of physical care of the children to Celina—arguing joint physical care should be granted. He also challenges the child and spousal-support awards, contending the court erred by refusing to impute income to Celina.

**I.    Standard of Review**

The standard of review in dissolution-of marriage actions is de novo. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). While we give weight to the district court's findings of fact, particularly to witness credibility, we are not bound by them. *Id.* "We will disturb the trial court's order 'only when there has been a failure to do equity.'" *Id.* (quoting *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005)).

---

[1] The amount of child support is to decrease as the number of children eligible for support decreases over time.

## II.    Physical Care

Corey asserts the district court erred in granting Celina physical care of the children.  On appeal, he argues the parents should have joint physical care.  While we recognize both parents are suitable caregivers, our determination is focused on the children's best interests.  *See In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007).  We consider a myriad of factors when making a physical-care determination.  *See In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007); *see also In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974).  In particular, in assessing whether to grant joint physical care, we base our decision on four key, although not exclusive, factors: (1) stability and continuity of caregiving (sometimes referred to as "approximation" of the historical caregiving arrangement); (2) the parents' ability to communicate with and show respect to each other; (3) the degree of conflict between the parents; and (4) the degree to which parents agree about their approach to day-to-day matters.  *Hansen*, 733 N.W.2d at 696-99.

As to the first factor, Celina has historically been the primary caregiver to the children.  She stayed at home, schooled the children, maintained the home, scheduled routine medical appointments, and made sure the bills were paid on time.  This does not diminish Corey's important contribution of financially supporting the family and taking an active interest in the children when home, but Celina's role as the primary caregiver has been firmly established.  This factor weighs heavily in favor of granting Celina physical care rather than granting joint physical care.

As to the next two factors, the record reveals the parties have had communication issues and conflict with one another. These problems were significant enough to cause the issuance of a temporary injunction limiting their contact for the two years leading to trial. This track record of disagreement and conflict between the parents cuts against granting joint physical care.

As to the fourth factor, the parents seemingly agreed on many parenting decisions before separating, but they now disagree on the method of disciplining the children and whether the youngest should remain homeschooled. As discipline and education are reoccurring issues in the day-to-day lives of the children, the parents' conflict on these issues also cuts against awarding joint physical care.

For all these reasons, we agree with the district court's decision not to grant joint physical care. We agree with the district court that granting Celina physical care of the children is in their best interests and affirm on this issue.

## III. Child Support

For purposes of calculating Corey's support obligations, the district court averaged five years of his income and determined his gross annual income to be $119,644.23. Corey does not challenge this finding. His challenge to the determination of his child-support obligation is limited to attacking the district court's decision not to impute income to Celina. He contends Celina should be required to return to work, and, if she doesn't, income should be imputed to her as if she did.

We begin by noting that both parents have legal obligations to support their children in accordance with their ability to pay. *See Moore v. Kriegel*, 551 N.W.2d 887, 889 (Iowa Ct. App. 1996). Courts use child support guidelines to calculate

each parent's obligation to support the children's needs. *In re Marriage of Dirkx*, No. 18-0422, 2019 WL 3330625, at *3 (Iowa Ct. App. July 24, 2019).

> For child support purposes, the court should not use earning capacity rather than actual earnings "unless a written determination is made that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the children or to do justice between the parties."

*Id.* (quoting Iowa Ct. R. 9.11(4)). Here the district court made no such finding, and Corey implicitly asks us to do so. We decline the request.

We are mindful of the fact that when a marriage dissolves the family bears the financial burden of maintaining two households instead of one while the income remains the same. This nearly always causes a financial strain, as it does here. *See Gust*, 858 N.W.2d at 415 (recognizing that "two households are inevitably more expensive to maintain than one"). To ease this strain, Corey contends Celina should be required to obtain employment—or at least be treated as if she has done so by imputing income to her. He supports his argument by contending Celina's homeschooling efforts have been inadequate, so her desire to continue homeschooling does not justify her failure to obtain employment. The district court had this to say about Corey's contention:

> In sum, nothing in the record persuasively suggests that Celina's homeschooling is inadequate. The court is convinced that the parties have always agreed that the kids should be homeschooled until eighth grade. And the court is likewise convinced that Corey's recent claimed opposition to Celina's continued homeschooling of [the youngest child] is based on nothing more than his desire to reduce his child support and spousal support obligations.

We agree with this assessment by the district court. This is not a situation where Celina is dragging her feet to enter the workforce by inertia or lack of drive.

Instead, she is simply continuing to fulfill her end of a clearly established agreement the parents have had since day one of their parenting journey. There is a limited window remaining during which homeschooling will take place pursuant to the parents' agreement, and Celina should be allowed to continue to fulfill her end of the bargain. So, until the youngest child completes the seventh grade while still being homeschooled, we agree with the district court that income should not be imputed to her. Thereafter, Celina's income or the imputation thereof can be addressed via a modification action.

We also reject Corey's suggestion that Celina can work part-time when she is not homeschooling the youngest. While dissolution of a marriage necessarily results in the family having to roll with the changes and the need to chart new courses, it is not always necessary to abort all previous plans. Such is the case here. Having Celina work part-time while also homeschooling the children was never part of the parties' agreement. And suggesting that it should become part of the plan now that only one child is still being homeschooled ignores the fact that, in addition to homeschooling the youngest, Celina still has day-to-day physical-care responsibilities for all four children. This is time-consuming, necessary work, and we decline to require Celina to gain part-time employment (or impute income to her as if she did) while juggling it under these circumstances.

As we agree with the district court's decision not to impute income to Celina at this time, we affirm the court's child-support determination.

## IV.     Spousal Support

In contrast to child-support determinations, spousal-support determinations do not follow any set guidelines.  In deciding whether to award spousal support—and the duration and amount thereof—courts are to consider all the following:

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> g. The tax consequences to each party.
> h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
> i. The provisions of an antenuptial agreement.
> j. Other facts the court may determine to be relevant in an individual case.

Iowa Code § 598.21A (2021).  After considering these factors, the district court granted Celina a combination of rehabilitative, transitional, and duration-limited traditional spousal support.  *See In re Marriage of Pazhoor*, 971 N.W.2d 530, 539–542 (Iowa 2022) (describing the four types of spousal support).  The court ordered Corey to pay $1000 per month until 2030, and then $500 per month until 2035 to help Celina develop her earning capacity, as she has stayed at home with the children for over seventeen years.  We will not alter this finding unless we find the district court has failed to do equity.  *Gust*, 858 N.W.2d at 406.

In challenging the spousal-support award, Corey relies primarily on his reprised argument about imputing income to Celina that he made regarding child support. For the same reasons we rejected his argument for imputing income to Celina in the context of child support, we reject it as to spousal support as well.

Properly considering Celina's lack of income with no imputation of income and comparing it to Corey's, there is a significant disparity of income that favors an award of spousal support. And the parties' marriage is just short of twenty years, which also favors an award of spousal support. *See Pazhoor*, 971 N.W.2d at 542 (recognizing that a seventeen-year marriage is "by no means a short marriage" and finding a substantial award of spousal support appropriate). As to the other factors, we find the district court's analysis of the spousal-support determination to be thorough, accurate, and equitable. On our de novo review, we agree with the district court's spousal-support determination.

## V.     Conclusion

We agree with the district court's decision not to grant joint physical care and affirm the placement of physical care of all four children with Celina. We also agree with the district court's decision not to impute income to Celina at this time. As this was the only challenge to the child-support determination, we affirm on that issue. Finally, we agree with the district court's analysis and conclusions in setting Corey's spousal-support obligation and find it equitable, so we affirm on that issue as well.

**AFFIRMED.**